The PEOPLE of the State of
Colorado, Petitioner,

v.

Pete GARCIA, Respondent.

No. 90SC416.

Supreme Court of Colorado,
En Banc.

July 15, 1991.

As Modified on Denial of Rehearing
Sept. 16, 1991.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Paul Koehler and Douglas J. Friednash, Asst. Attys. Gen., Denver, for petitioner.

David F. Vela, Colorado State Public Defender, and Robin Desmond, Deputy State Public Defender, Denver, for respondent.

Justice QUINN delivered the Opinion of the Court.

We granted certiorari to consider whether the court of appeals erred in *People v. Garcia,* 799 P.2d 413 (Colo.App.1990), when it ordered the trial court to conduct an evidentiary hearing on the claim of the defendant, Pete Garcia, that his conviction on the charge of accessory to first degree assault was constitutionally infirm as violative of his constitutional right to effective assistance of counsel. Garcia's Crim.P. 35(c) claim alleged that his defense attorney failed to properly advise him regarding the effect of a guilty plea on his contemplated civil action against law enforcement officers for his arrest and prosecution, and that if he had been properly advised he would not have made the decision to plead guilty. In denying Garcia's motion, the trial court ruled that the acceptance of the guilty plea necessarily barred any civil claim arising out of the incident underlying the plea and that Garcia accordingly failed to demonstrate any actual prejudice as a result of his attorney's erroneous advice. The court of appeals reversed the judgment and remanded the case for further proceedings to determine whether defense counsel's advice fell below the standard of competence demanded of attorneys in criminal cases and whether there is a reasonable probability that defense counsel's erroneous advice caused Garcia to enter the guilty plea. We conclude that the court of appeals' resolution of this case is in accord with controlling legal standards, and we accordingly affirm the judgment.

I.

Garcia and his brother were charged with two counts of attempted first degree murder,[1] two counts of first degree assault,[2] and two counts of committing a crime of violence.[3] The charges arose out of a shooting incident on March 27, 1987, when officers of the Jefferson County Sheriff's Department were in the process

---

1. Attempted first degree murder, as charged, was a class 2 felony, § 18–2–101(4), 8B C.R.S. (1986), punishable by a presumptive minimum sentence of eight years and a presumptive maximum sentence of twenty-four years, § 18–1–105(1)(a)(IV), 8B C.R.S. (1986).

2. Attempted first degree assault, as charged, was a class 3 felony, § 18–3–202(1)(e) & (2)(b), 8B C.R.S. (1986), punishable by a presumptive minimum sentence of four years and a presumptive maximum sentence of sixteen years, § 18–1–105(1)(a)(IV), 8B C.R.S. (1986).

3. The crimes of violence, as charged, carried a mandatory sentence greater than the presumptive maximum sentence applicable to the substantive crime but no greater than twice the presumptive maximum term. § 16–11–309(1)(a), 8A C.R.S. (1986).

of executing a no knock search warrant for drugs at a residence in which Garcia and his brother were present. Garcia was arrested at the scene and remained in jail during the pendency of the proceedings against him. The sequence of events occurring thereafter is based on affidavits filed in connection with Garcia's Crim.P. 35(c) motion and testimony elicited at the hearing on the motion.

Following his arrest, Garcia retained an attorney to defend him on the charges. The defense attorney and the district attorney entered into plea negotiations, which culminated in the prosecution's offer to accept a guilty plea to the charge of accessory to commit first degree assault in exchange for the dismissal of the other pending counts. Defense counsel met with Garcia on December 19, 1987, to discuss the terms of the offer. During the course of their conversation, Garcia informed defense counsel that he did not want to jeopardize his right to file a civil action against the officers involved in the incident resulting in his arrest and prosecution. Following defense counsel's assurance that a plea of guilty would not bar any civil action, Garcia agreed to plead guilty to the charge of accessory to commit first degree assault.

On December 21, 1987, Garcia appeared in court with defense counsel and again inquired of counsel whether the guilty plea would adversely affect his contemplated civil action. After receiving reassurance from defense counsel that it would not, Garcia signed a written acknowledgement that he had been adequately advised by his attorney of his rights, that he understood his rights, as well as the nature of the charges and the elements of the offense to which he was pleading guilty, that he understood the possible penalties applicable to his guilty plea, and that his plea was voluntary. The trial court arraigned Garcia on the accessory charge and accepted his plea of guilty.[4] Several weeks later, at a presentence hearing, the court entered a judgment of conviction on the guilty plea and ordered Garcia to pay restitution in the amount of $252.07 as well as court costs and a probation supervision fee.

In March 1988 Garcia filed in the United States District Court a pro-se civil complaint against several law enforcement officers for his arrest and prosecution resulting from the incident of March 27, 1987. Garcia later retained the services of an attorney, who filed an amended complaint but later dismissed the civil action on the basis that Garcia's claims were barred as a result of his guilty plea.[5] Thereafter on September 29, 1988, Garcia filed a motion to vacate his conviction pursuant to Crim.P. 35(c). Garcia asserted in his motion that prior to entering his guilty plea he specifically inquired of defense counsel on at least two occasions whether a guilty plea would affect his ability to initiate a civil action against the law enforcement officers involved in the incident on March 27, 1987, that he was advised by defense counsel that his guilty plea would have no effect on his civil remedies, and that he would not have entered the guilty plea if he had been aware and correctly advised of his inability to bring a civil claim in connection with his arrest and criminal prosecution. Garcia's

---

4. The crime of accessory to first degree assault, as charged, was a class 5 felony, § 18-8-105(4), 8B C.R.S. (1986), punishable by a presumptive minimum sentence of one year and a presumptive maximum sentence of four years, § 18-1-105(1)(a)(IV), 8B C.R.S. (1986).

5. Garcia's initial complaint in federal court was based on 42 U.S.C. § 1983 (1989) and named as defendants the County of Jefferson, the Jefferson County Sheriff, and various deputy sheriffs designated as John Does. Garcia's claim against Jefferson County was dismissed because the complaint failed to allege that any of the individual defendants were acting pursuant to a county custom or practice. The claim against the individual officers was dismissed as vague and conclusory. Garcia also included in the federal complaint a common law claim for abuse of process. The federal district court dismissed that claim, since Garcia had filed an identical lawsuit in the state court. In dismissing Garcia's claims, the federal court granted him leave to file an amended complaint. His attorney thereafter filed the amended complaint, but then voluntarily dismissed the federal action upon determining that the claims were barred as a result of Garcia's guilty plea.

The civil action filed by Garcia in the state court was dismissed due to his failure to comply with the notice provisions of the Governmental Immunity Act.

motion was supported by his own affidavit as well as the affidavit of the attorney who represented him when the guilty plea was entered. Defense counsel's affidavit averred as follows:

During our discussions concerning the plea agreement, Mr. Garcia inquired of me as to whether or not he would still be able to pursue civil remedies for claims arising as a result of the incident for which I was representing him even though he was entering a plea of guilty.

At that time, I believed that Mr. Garcia's civil remedies would not be barred if he ple[d] guilty in the case and I advised him of this.

Subsequent to our discussions, Mr. Garcia executed a Petition to Enter a Plea of Guilty and did in fact enter a plea of guilty in that case.

During the hearing on the Crim.P. 35(c) motion, the prosecution called defense counsel as a witness. Defense counsel testified that he advised Garcia that his conviction "could be used for impeachment purposes," but that he did not believe the conviction would bar Garcia's civil remedies. The attorney acknowledged that, although he had never filed a claim for false imprisonment or malicious prosecution, he consulted with several other attorneys on this matter before advising Garcia of the effect of his plea on any contemplated civil action.

The trial court denied Garcia's motion. Noting that Garcia was not contesting the validity of the court's advisement at the providency hearing, the court ruled that its acceptance of the guilty plea was a determination that the charge against Garcia was true, that guilty plea constituted a bar to Garcia's civil action, and that Garcia failed to show any actual prejudice resulting from any alleged incompetency of defense counsel.

Garcia appealed the judgment to the court of appeals, which reversed the judgment and remanded the case to the trial court for further proceedings. The court of appeals concluded that defense counsel gave Garcia incorrect advice regarding the consequences of a guilty plea and failed to base that advice on adequate research. The court accordingly directed the trial court to determine whether defense counsel's performance was constitutionally deficient. The court of appeals also was of the view that the trial court's resolution of the prejudice issue incorrectly focused on whether Garcia's "civil claims were dismissed because of 'truths' he admitted by virtue of his guilty plea" rather than by evaluating whether "there is a reasonable probability that he would not have pleaded guilty but for counsel's error." 799 P.2d at 415. We thereafter granted the People's petition to consider the correctness of the court of appeals' resolution of this case.

II.

The Sixth Amendment of the United States Constitution guarantees an accused the right to effective assistance of counsel. The purpose of this constitutional guarantee is to ensure the accused a level of assistance calculated to produce a fair and just result in a criminal prosecution. *E.g.*, *United States v. Cronic*, 466 U.S. 648, 655–56, 104 S.Ct. 2039, 2044–45, 80 L.Ed.2d 657 (1984); *Cuyler v. Sullivan*, 446 U.S. 335, 343, 100 S.Ct. 1708, 1715, 64 L.Ed.2d 333 (1980); *see Gideon v. Wainwright*, 372 U.S. 335, 344–45, 83 S.Ct. 792, 796–97, 9 L.Ed.2d 799 (1963). The constitutional standards for resolving a claim of ineffective assistance of counsel provide the analytical framework for resolving this case.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court outlined the standards for evaluating a claim that a criminal conviction was obtained in violation of an accused's right to effective assistance of counsel. The Court held that any such claim must satisfy two components: first, defense counsel's performance must have been constitutionally deficient; and second, the deficient performance must have prejudiced the defense of the case. *Id.* at 687, 104 S.Ct. at 2064. While an ineffective-assistance claim involves an inquiry into matters of historical fact, the proper resolution of both the performance and prejudice components of the claim is a

mixed question of fact and law. *Id.* at 698, 104 S.Ct. at 2070. Unless the defendant establishes both components, "it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687, 104 S.Ct. at 2064.

■ The test for evaluating an attorney's performance is whether the attorney's assistance is within the range of competence demanded of attorneys in criminal cases under prevailing professional norms. *Id.* at 688, 104 S.Ct. at 2064–65. Because "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant," a court must be "highly deferential" in reviewing counsel's performance and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 688–89, 104 S.Ct. at 2065. The court reviewing counsel's performance, therefore, should ignore "the distorting effects of hindsight," and should make every effort to "reconstruct the circumstances of counsel's challenged conduct" and "evaluate the conduct from counsel's perspective at the time." *Id.* at 689, 104 S.Ct. at 2065. In light of the fact that counsel's actions are often based on "informed strategic choices made by the defendant and on information supplied by the defendant," judicial inquiry into conversations between the defendant and defense counsel regarding matters of special concern to the defendant's strategic litigation decision will play a critical role in the evaluation of counsel's performance. *Id.* at 691, 104 S.Ct. at 2066.

■ The prejudice component of an ineffective-assistance claim requires the defendant affirmatively to prove prejudice. *Id.* at 693, 104 S.Ct. at 2067–68. While this requirement means that the defendant must establish more than the mere possibility that counsel's errors affected the outcome of the proceeding, it does not require the defendant to prove that counsel's errors "more likely than not altered the out-

come in the case." *Id.* The prejudice component requires the defendant to prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. A reasonable probability, in this sense, is "a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id.* In resolving an ineffective-assistance claim, a court is not required to first determine whether counsel's performance was constitutionally deficient, for if the defendant fails to make an affirmative demonstration of prejudice, then the court may resolve the claim on that basis alone. *Id.* at 697, 104 S.Ct. at 2069–70.

■ Although *Strickland* involved an ineffective-assistance claim based on counsel's conduct at a capital sentencing hearing, the standards adopted therein are equally applicable to a conviction based on a guilty plea to a criminal charge. In *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), for example, the issue was whether a defendant's guilty pleas to first degree murder and theft were constitutionally infirm due to defense counsel's incorrect advice that the defendant, although a second offender, would be eligible for parole after serving one-third rather than one-half of his prison sentence. Acknowledging that there was no constitutional precedent requiring a trial court to inform the defendant of his parole eligibility and that the defendant's claim was not based on any such assertion, the Supreme Court adopted the same two-part test of *Strickland* in evaluating an ineffective-assistance claim arising out of the plea process. *Id.* 474 U.S. at 56–58, 106 S.Ct. at 369–70. Under the first part of the *Strickland* test, the voluntariness of an accused's counseled guilty plea will depend "on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* 474 U.S. at 56, 106 S.Ct. at 369 (quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970)). The Court concluded, however, that Hill failed to satisfy the prejudice component of

*Strickland* by failing to allege in his habeas petition that he would have pleaded not guilty and insisted on going to trial if his attorney had correctly advised him about his parole eligibility date. *Id.* 474 U.S. at 60, 106 S.Ct. at 369. It thus was unnecessary for the Court to determine whether Hill's allegations regarding defense counsel's erroneous advice satisfied the performance component of *Strickland.*[6]

We had occasion to apply the *Strickland–Hill* principles in *People v. Pozo*, 746 P.2d 523 (Colo.1987), where we considered the cognizability of a defendant's claim that his guilty pleas to second degree sexual assault and escape were involuntary due to defense counsel's failure to advise the defendant of the possible deportation consequences of the guilty pleas. We held in *Pozo* that a trial court, in evaluating the significance of defense counsel's failure to investigate and research a particular body of law prior to advising a defendant on a proposed plea bargain, must first determine "whether the body of law was relevant to the circumstances of the client and the matters for which the attorney was retained," and then whether the attorney had reason to believe "that the area of law in question was relevant to the client and the client's legal problems." *Id.* at 527–28. We went on to conclude that, in the context of Pozo's alien status, the potential deportation consequences of his guilty pleas could significantly affect his decision to plead guilty and thus constituted a critical part of effective representation. *Id.* at

529. Because, however, the record in *Pozo* did not establish whether defense counsel had reason to know that Pozo was an alien, we ordered the case to be remanded to the trial court for resolution of that question as well as the question of prejudice. *Id.* at 529.[7]

It is in light of the principles explicated in *Strickland, Hill,* and *Pozo* that we must evaluate the propriety of the court of appeals' reversal of the trial court's denial of Garcia's Crim.P. 35(c) motion and the court of appeals' order of remand to the trial court for a further evidentiary hearing.

### III.

Garcia's Crim.P. 35(c) motion specifically alleged that he inquired of defense counsel whether a guilty plea would bar his contemplated civil action arising out of the incident on which the criminal charges were based and that he was told by defense counsel that his civil action would not be barred. Moreover, in contrast to the defective habeas petition in *Hill,* Garcia's Crim.P. 35(c) motion also alleged that he would not have entered a guilty plea if defense counsel had advised him that a guilty plea would constitute a bar to his contemplated civil action. The allegations pertaining to defense counsel's advice to Garcia were supported by the affidavit and testimony of defense counsel, who expressly acknowledged that he answered Garcia's repeated request about the effect of a guilty plea on Garcia's civil action by tell-

---

**6.** In *Hill,* Justice White, joined by Justice Stevens, concurred in the judgment. Justice White pointed out that Hill had signed a written "plea statement," a standardized form to be completed by defense counsel in conjunction with his client, indicating that he understood the charges and the consequences of pleading guilty and that he was aware of everything in the plea statement. However, in the space provided for disclosing the number of prior convictions, Hill's form read "0." 474 U.S. at 61, 106 S.Ct. at 371–72. In Justice White's view, Hill thus had no factual basis for suggesting that his attorney's advice was incompetent or that he was affirmatively misled by counsel as to his earliest possible parole eligibility date. *Id.* Justice White went on to emphasize, however, that were it not for the misinformation in the police statement, Hill would be entitled to relief if his

defense attorney had known of the prior conviction and still informed Hill that he would be eligible for parole after serving one-third of his sentence. *Id.* at 62, 106 S.Ct. at 372. Moreover, Justice White also was of the view that the record revealed that Hill alleged sufficient facts to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

**7.** In its ruling, the trial court distinguished the facts of this case from those of *People v. Pozo,* 746 P.2d 523 (Colo.1987), on the basis that this case involved only the defendant's right to initiate a civil action while *Pozo* involved a significant liberty interest in avoiding deportation.

ing him that a guilty plea would not bar any civil claim.

There is no question that the legal advice sought by Garcia was highly significant to his ultimate decision to plead guilty to the accessory charge, nor is there any doubt that defense counsel knew of its significance to Garcia's acceptance of the offered plea bargain. In denying Garcia's ineffective-assistance claim, however, the trial court declined to consider the performance component of the claim and instead resolved Garcia's claim on the basis of no prejudice. While we recognize that we are obliged in the first instance to presume that defense counsel's advice fell within the range of reasonable professional assistance, *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, we are satisfied in this case that the evidence before the trial court was sufficient to neutralize that presumption. Whether or not defense counsel's advice was incorrect and, if so, whether it was so unreasonable as to amount to ineffective assistance raised mixed questions of fact and law, *id.* at 698, 104 S.Ct. at 2065, which cannot be decided on the state of this record. In the absence of a legally sound ruling on the lack of prejudice—an issue we presently address—it was incumbent on the trial court to resolve the performance component of Garcia's ineffective-assistance claim on the basis of a fully developed record. We agree, therefore, with that part of the court of appeals' decision remanding the case to the trial court for further hearings on the performance component of Garcia's claim.

We turn then to the prejudice element of Garcia's ineffective-assistance claim. In resolving the issue of prejudice, the court of appeals concluded that the trial court incorrectly focused on whether Garcia's civil complaint was "dismissed because of 'truths' he admitted by virtue of his guilty plea" rather than determining whether "there is a reasonable probability that he would not have pleaded guilty but for counsel's error." 799 P.2d at 415. We agree with the court of appeals' conclusion. The proper standard for resolving the issue of prejudice, as stated by the Supreme

Court in *Hill,* is whether "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." 474 U.S. at 59, 106 S.Ct. at 370. The trial court should have focused on that standard in determining whether, if defense counsel had properly advised Garcia about the effect of a guilty plea on his contemplated civil action against the law enforcement officers, Garcia would have rejected the plea bargain and would have risked a trial on the more serious charges in lieu of a guilty plea to the accessory charge.

We accordingly affirm the judgment of the court of appeals, and we remand the case to that court with directions to return the case to the trial court for further proceedings consistent with the views herein expressed.

ERICKSON, J., dissents, and ROVIRA, C.J., joins in the dissent.

VOLLACK, J., dissents, and ROVIRA, C.J., and ERICKSON, J., join in the dissent.

Justice ERICKSON dissenting:

I join Justice Vollack in his dissent, but write separately to emphasize the purpose of the providency hearing and the limited grounds for setting aside a defendant's guilty plea. In my dissent in *People v. Pozo,* 746 P.2d 523 (Colo.1987), I emphasized the limited scope of a claim of ineffective assistance of counsel in an attack on the validity of a plea of guilty. (Erickson, J., dissenting). 746 P.2d at 530. I joined Justice Rovira in his dissent and in his analysis:

> The interest at stake in a Crim.P. 11 proceeding is whether the defendant voluntarily entered a plea of guilty to the crime for which he was charged.

> In *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the defendant sought post-conviction relief on the ground that had he known of a subsequent Supreme Court decision at the time of his plea, he never would have

pleaded guilty. The Supreme Court rejected his argument stating:

> Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment.

397 U.S. at 748, 90 S.Ct. at 1468. The Supreme Court also said:

> A plea of guilty entered by one fully aware of *direct* consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats ... misrepresentation ... or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business.

397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970), quoting *Shelton v. United States*, 246 F.2d 571, 572 n. 2 (5th Cir.1957), *rev'd on other grounds*, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958) (emphasis added).

There is no contention by Pozo that he did not understand the direct consequences of his plea or that his plea was invalid because of any threat, misrepresentation, or other impropriety.

746 P.2d at 531 (Rovira, J., dissenting).

Here, the defendant claims that his counsel's failure to properly advise him that his plea of guilty would limit his civil claims relating to his arrest and prosecution vitiates his plea. No claim is made that a factual basis is lacking for the plea, or that the defendant did not in fact commit the crimes charged. Erickson, *The Finality of a Plea of Guilty*, 48 Notre Dame Law. 835 (1973).

ROVIRA, C.J., joins in this dissent.

Justice VOLLACK dissenting:

The majority holds that a criminal defense attorney's misinformation regarding the effect of a guilty plea on a defendant's civil remedies may be ineffective assistance of counsel requiring the withdrawal of the defendant's plea. I believe the majority's opinion is an expansion of *People v. Pozo*, 746 P.2d 523 (Colo.1987) (attorney's failure

to advise a client of potential deportation consequences of a guilty plea may constitute ineffective assistance of counsel), signalling an open invitation for defendants to challenge guilty pleas based on any number of collateral consequences. In my view, the majority elevates the effective assistance of counsel guarantee of the sixth amendment beyond its intended purpose and will result in an impossible burden. Accordingly, I dissent.

The defendant was charged with two counts of attempted first degree murder, two counts of first degree assault, and two counts of committing a crime of violence. He pleaded guilty to a charge of accessory to commit first degree assault in exchange for dismissal of the other counts. In so pleading, the defendant signed a written acknowledgement that his attorney had advised him of his rights, that he understood by pleading guilty he waived certain constitutional rights, that he understood the nature of the charge and the elements of the offense to which he was pleading guilty, that he understood the possible penalties applicable to his plea, and that his plea was voluntary. The defendant later filed a motion to vacate his conviction pursuant to Crim.P. 35(c), alleging that, in response to his inquiries, defense counsel had misinformed him that a guilty plea would not jeopardize his ability to bring a civil claim related to his arrest and criminal prosecution. The trial court denied the motion, concluding that the defendant had not established that he had been prejudiced by his attorney's advice. The court of appeals reversed and remanded the case to the trial court to determine whether defense counsel's conduct "fell below acceptable standards" and whether the defendant was prejudiced. *People v. Garcia*, 799 P.2d 413, 415 (Colo.App.1990).

When a conviction is attacked by means of a Crim.P. 35(c) motion, "the legality of the judgment and the regularity of the proceedings leading up to the judgment are presumed. The burden is upon the defendant to establish by at least the preponderance of the evidence the allegations" of the motion. *Lamb v. People*, 174 Colo. 441,

446, 484 P.2d 798, 800 (1971) (citations omitted). The test for determining the validity of a guilty plea is whether the plea was made voluntarily and knowingly. *See Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985); *Harshfield v. People,* 697 P.2d 391, 393 (Colo.1985). Thus, the defendant in the present case must show that defense counsel's performance was constitutionally inadequate so as to render his plea involuntary. *See Hill,* 474 U.S. at 56, 106 S.Ct. at 369.

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court established the standards for determining whether "[defense] counsel's assistance was so defective" as to constitute a denial of the defendant's sixth amendment guarantee to effective assistance of counsel. *Id.* at 687, 104 S.Ct. at 2064. The defendant must show that (1) counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced the defense. *Id.* In *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985), the Court held that the two-part test applied to challenges to guilty pleas based on ineffective assistance of counsel.

In its explanation of this test, the *Strickland* Court made several critical statements regarding the sixth amendment guarantee that bear on the case presented to this court. Throughout the opinion, the Court reiterated that the constitutional right to effective assistance of counsel is deemed necessary to ensure that fairness predominates in the adversarial system so that just results are attained. *See Strickland,* 466 U.S. at 685, 104 S.Ct. at 2063. Hence, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* at 696, 104 S.Ct. at 2069. In deciding the reasonableness of counsel's conduct, the court should be mindful that it is counsel's function "to make the adversarial testing process work in the particular case," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066. In advising that "[j]udicial scrutiny of counsel's performance must be highly deferential," *id.* at 689, 104 S.Ct. at 2065, the Court cautioned that

> [t]he availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges.... Counsel's performance and even willingness to serve could be adversely affected. Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.

*Id.* at 690, 104 S.Ct. at 2066. Thus, "[c]ourts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result." *Id.* at 697, 104 S.Ct. at 2069.

In my view, by opening the Pandora's box of collateral consequences with today's opinion, the majority of this court ignores *Strickland*'s caution by imposing an unreasonable burden on defense counsel to the detriment of our criminal justice system. Moreover, the majority's holding to include advice on the collateral consequences of guilty pleas among the constitutional guarantees of an accused contradicts "the fundamental interest in the finality of guilty pleas." *Hill v. Lockhart,* 474 U.S. at 58, 106 S.Ct. at 370.

In his dissent to *Pozo,* Chief Justice Rovira noted that the purpose served by a Crim.P. 11 proceeding is to ensure that the defendant voluntarily and knowingly pleads guilty to the crime for which he is charged, and an ineffectiveness of counsel challenge to a guilty plea is relevant only in relation to the defendant's voluntariness and understanding in pleading guilty. *Pozo,* 746 P.2d at 531 (Rovira, J., dissenting). A plea is knowing and voluntary, and thus devoid of constitutional infirmity, when the defendant is fully aware of the *direct* consequences of the plea; that is, those having a " 'definite, immediate, and

largely automatic effect on the range of [a defendant's] punishment.'" *Id.* (quoting *People v. Heinz,* 197 Colo. 102, 106, 589 P.2d 931, 933 (1979) (quoting *Cuthrell v. Director,* 475 F.2d 1364, 1366 (4th Cir. 1973))). Indeed, in *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the United States Supreme Court explicitly stated that "[a] plea of guilty entered by one fully aware of the *direct* consequences" is valid, *id.* at 755, 90 S.Ct. at 1472 (emphasis added), regardless of whether counsel failed to advise the defendant of the numerous collateral consequences of pleading guilty.

Direct consequences relate strictly to sentencing, whereas collateral consequences are many and conceivably beyond the legitimate sphere of a criminal defense attorney's expertise. They may include the loss of civil service employment, the right to vote, the ability to travel freely abroad, exclusion from military service, as well as adverse social consequences. *See generally* J. Bond, *Plea Bargaining & Guilty Pleas* §§ 3.38–.49 (2d ed. 1983). While each of these results may have a harsh impact on a defendant, I agree with those jurisdictions denying that defendants have a constitutional right to be informed of such collateral consequences. *See United States v. Del Rosario,* 902 F.2d 55, 59 (D.C.Cir.1990); *United States v. Crowley,* 529 F.2d 1066, 1072 (3d Cir.1976); *Cuthrell v. Director,* 475 F.2d 1364, 1366 (4th Cir. 1973); *Hutchison v. United States,* 450 F.2d 930, 931 (10th Cir.1971); *Redwine v. Zuckert,* 317 F.2d 336, 338 (D.C.Cir.1963); *Oyekoya v. State,* 558 So.2d 990, 990–91 (Ala.Crim.App.1989); *State v. Casseus,* 513 So.2d 1045, 1045 (Fla.1987); *Clark v. State,* 736 S.W.2d 483, 484 (Mo.App.1987); *Commonwealth v. Frometa,* 520 Pa. 552, 553, 555 A.2d 92, 93 (1989); *State v. Santos,* 136 Wis.2d 528, 530, 401 N.W.2d 856, 858 (App. 1987). In my view, a defendant's constitutional guarantee to effective assistance of counsel is fulfilled when that defendant is made fully aware of the *direct* consequences of pleading guilty. Thus, a voluntary and knowing plea does not require knowledge of collateral consequences, for "the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation," but simply to ensure that fairness prevails in criminal proceedings. *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. at 2065.

Accordingly, in the present case, the trial court was only required to determine if the defendant was fully aware of the direct consequences of pleading guilty to the charge of accessory to commit first degree assault. That he understood and voluntarily agreed to those consequences is evidenced by his signing the written acknowledgement. The defendant does not attack his counsel's advice on the direct effect of his guilty plea. Instead, the defendant's sole ground for vacating his conviction was his attorney's advice on the collateral consequence of a guilty plea on his civil case. I respectfully dissent.

I am authorized to say that Chief Justice ROVIRA and Justice ERICKSON join in this dissent.