22CA0367 Peo v Johnston 04-24-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA0367
Arapahoe County District Court No. 10CR787
Honorable Shay K. Whitaker, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Steven Earl Johnston,

Defendant-Appellant.

---

ORDER AFFIRMED

Division VI
Opinion by JUDGE BROWN
Welling and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 24, 2025

---

Philip J. Weiser, Attorney General, Melissa D. Allen, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Robin M. Lerg, Alternate Defense Counsel, Montrose, Colorado, for Defendant-Appellant

¶ 1     Defendant, Steven Earl Johnston, appeals the postconviction court's January 2022 order denying his request for postconviction relief under Crim. P. 35(c).  We affirm the court's order.

## I.     Background

¶ 2     In March 2010, Johnston and Paul Chatman entered the back seat of a car occupied by the victim (who sat in front of Johnston in the passenger seat) and D.D-L. (who sat in front of Chatman in the driver's seat).  Once inside the car, Chatman pulled out a gun, pointed it at the victim and D.D-L. and said, "[T]his is some cold-hearted shit, but it's hard times out here, empty everything out of your pockets, money, everything."  Johnston also pulled out a gun and held it to the back of the victim's head.  The victim told D.D-L. to leave the car, and as she was walking away, "seven or eight" gunshots rang out from inside the vehicle.  The victim and Chatman suffered fatal gunshot wounds, and Johnston fled the scene.

¶ 3     Johnston was charged with first degree felony murder, two counts of attempt to commit aggravated robbery, conspiracy to commit aggravated robbery, possession of a weapon by previous offender, and two crime of violence sentence enhancers.  At trial,

1

the prosecution argued that Chatman and Johnston had conspired and attempted to rob the victim and D.D-L. during a drug deal and that Chatman and the victim were both killed during the attempt. Through counsel, Johnston denied any conspiracy to rob the victim and D.D-L. and explained that he only shot at the victim in self-defense. The jury found Johnston guilty of first degree felony murder, one count of attempted aggravated robbery, conspiracy to commit aggravated robbery, and two crime of violence sentence enhancers.[1]

¶ 4    On direct appeal, a division of this court affirmed the convictions. *People v. Johnston,* (Colo. App. No. 12CA0855, Apr. 14, 2016) (not published pursuant to C.A.R. 35(e)). A year later, Johnston filed a pro se motion for postconviction relief under Crim. P. 35(c), raising fifteen claims relating to juror misconduct and ineffective assistance of counsel. The court appointed postconviction counsel, who filed a separate Crim. P. 35(c) motion, expanding on five of the claims Johnston brought in his original pro

---

[1] The jury acquitted Johnston of one count of attempted aggravated robbery, and the prosecution moved to dismiss the possession of a weapon by previous offender charge after the jury rendered its verdict.

se motion and adding a sixth claim relating to cumulative error. After conducting a two-day hearing, the postconviction court denied Johnston's request for postconviction relief in an order that addressed only the claims in the counseled motion.

## II.     Analysis

¶ 5     Johnston contends that the postconviction court erred by (1) failing to resolve the ten claims Johnston brought in his original pro se motion and (2) denying three claims of ineffective assistance of counsel.  Recent precedent forecloses Johnston's first contention, and he has failed to show sufficient prejudice resulting from the balance of his ineffective assistance claims.  Accordingly, we affirm the postconviction court's order.

### A.     Pro Se Crim. P. 35(c) Claims

¶ 6     In his opening brief, Johnston contended that the postconviction court erred by not resolving the ten claims he asserted in his pro se motion that were not addressed in the motion filed by postconviction counsel.  But after Johnston filed his opening brief, the supreme court held that counsel abandons postconviction claims made in a pro se motion by not addressing them in a later-filed counseled motion.  *See People v. Smith,* 2024

CO 3, ¶¶ 17-20. The People argue, Johnston concedes, and we agree that postconviction counsel abandoned Johnston's remaining pro se claims by not reasserting them in the counseled motion or demonstrating any intent to revisit them during the proceeding. *See id.* Thus, the postconviction court did not err by not resolving those claims.

## B. Ineffective Assistance of Counsel

¶ 7 Johnston contends that the postconviction court erred by denying his claims that trial counsel provided ineffective assistance by (1) failing to ask the trial court to remove a juror who had a familial relationship with a prosecution witness; (2) failing to consult with an independent forensic expert to provide evidence that would support Johnston's theory of defense; and (3) failing to provide the prosecution with age-related mitigating evidence during plea negotiations. We disagree.

### 1. Applicable Law and Standard of Review

¶ 8 Both the United States and the Colorado Constitutions guarantee a criminal defendant the right to effective assistance of counsel. U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16. To succeed on a claim of ineffective assistance of counsel, a defendant

4

must show that (1) counsel's performance was deficient, in that it fell below the minimum standard guaranteed by the Sixth Amendment; and (2) the defendant was prejudiced, in that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984); *Dunlap v. People*, 173 P.3d 1054, 1063 (Colo. 2007). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Dunlap*, 173 P.3d at 1063 (quoting *Strickland*, 466 U.S. at 694). It requires that the defendant prove more than a "mere possibility that counsel's errors affected the outcome" but does not require the defendant to prove that counsel's errors "more likely than not altered the outcome in the case." *People v. Garcia*, 815 P.2d 937, 941 (Colo. 1991) (quoting *Strickland*, 466 U.S. at 694). "Only where both the performance prong and the prejudice prong have been proven will a defendant be entitled to postconviction relief because of the ineffective assistance of counsel." *Dunlap*, 173 P.3d at 1063.

¶ 9 A claim of ineffective assistance of counsel presents mixed questions of fact and law. *Id.* We review the postconviction court's factual findings for clear error but review de novo its ultimate

determinations on each of the performance and prejudice prongs. *Id.*; *People v. Newmiller*, 2014 COA 84, ¶ 18; *People v. Brown*, 250 P.3d 679, 681 (Colo. App. 2010).

## 2. Failing to Remove a Juror

¶ 10    Johnston contends that his trial counsel provided ineffective assistance by affirmatively agreeing to retain a juror after the juror disclosed a familial relationship with one of the prosecution's witnesses and that counsel's conduct prevented him from successfully appealing the issue. We disagree that Johnston has shown sufficient prejudice to warrant reversal.

## a. Additional Background

¶ 11    Prior to jury selection, potential jurors were provided with a questionnaire and a witness list and were asked to identify any familiar names from the list in their questionnaire. Juror R completed his questionnaire indicating that his stepdaughter was employed by the Colorado Bureau of Investigation (CBI), but he did not indicate that he knew any of the prospective witnesses. Neither party questioned Juror R about his questionnaire during voir dire. Juror R was selected to serve on the jury.

¶ 12    The next morning, before evidence was presented, Juror R notified the court that his stepdaughter, Agent Green, was listed as a potential witness for the prosecution. When questioned by the district court, Juror R explained that he and his wife married when Agent Green was in college, that his relationship with his stepdaughter "wouldn't impact [him] at all," and that he could effectively evaluate her credibility despite their close relationship. Defense counsel then asked Juror R whether he had any discussions with Agent Green about the case and whether her work led him to feel any "partisanship or bias" in favor of the prosecution. Juror R stated that he and Agent Green "never" discuss her cases or the work she does for CBI.

¶ 13    Following defense counsel's questions, the prosecutor proffered that Agent Green would testify that she conducted latent fingerprint examinations on firearms and bullet casings connected to the crime but "didn't find anything." The prosecutor explained that Agent Green's role was "somewhat minimal" and merely to establish that the investigation was thorough. Rather than objecting to Juror R serving on the jury, defense counsel stated,

"[W]e would leave [Juror R] as a juror in this case based upon his answers to my questions."

¶ 14    In testimony during the Crim. P. 35(c) hearing, trial counsel conceded that she "should have excused Juror [R and] preserved the appellate issue with respect to Juror [R], which by not excusing him, essentially [she] waived." Johnston also offered a criminal defense expert who reviewed Johnston's direct appeal counsel's file and testified that because trial counsel failed to object, direct appeal counsel did not pursue the issue on appeal.

¶ 15    The postconviction court rejected Johnston's claim, concluding first that trial counsel's failure to ask additional questions of Juror R did not constitute deficient performance. "Perhaps even more persuasive," the court continued, "is the failure of the defense to demonstrate prejudice to the defendant by leaving Juror [R] as a sitting juror." The court reasoned that Agent Green's testimony "indicated no specific scientific findings" and "had little to no relevance to the case," and when trial counsel was questioned about the issue, she "indicated that she did not believe Agent Green said anything relevant to the case."

### b. Johnston Has Failed to Demonstrate Prejudice

¶ 16    Johnston argues that his trial counsel's decision to leave Juror R on the jury amounted to deficient performance and resulted in prejudice to him because he lost the ability to argue on appeal that the trial court erred by not removing Juror R. Even assuming counsel performed deficiently, we conclude that Johnston has failed to demonstrate that he suffered prejudice.

¶ 17    As an initial matter, the People contend that Johnston failed to preserve the claim he raises on appeal. They argue that Johnston "makes no argument on appeal that the postconviction court's ruling on prejudice was incorrect" but instead asserts a "whole new claim" arguing that "the loss of his right to appeal this issue" is the source of prejudice. In response, Johnston highlights a statement in his written closing argument to the postconviction court that "trial counsel's failure to object obviated an appellate issue that had to be analyzed under plain error as [trial counsel] did not object." Although this claim of prejudice was only meagerly developed before the postconviction court, we address and reject it on the merits. *See People v. Melendez*, 102 P.3d 315, 322 (Colo. 2004) (to preserve an issue for appeal, a party must present the trial court with "an

adequate opportunity to make findings of fact and conclusions of law" on the issue).

¶ 18     Johnston asserts that he "does not have to argue why the loss of his right to appeal the issue resulted in prejudice" because "the loss of the right to appeal itself is the prejudice." He draws support for his argument from *People v. Baker*, 104 P.3d 893 (Colo. 2005), and *People v. Long*, 126 P.3d 284 (Colo. App. 2005). Both cases found *Strickland* prejudice when appellate counsel's failure to timely file a notice of appeal entirely deprived the appellant of the right to a *direct* appeal. *Baker*, 104 P.3d at 897-98; *Long*, 126 P.3d at 286-87.

¶ 19     We acknowledge that when an ineffective assistance claim is based on counsel's failure to perfect a direct appeal, we do not analyze the merits of the proposed appellate claims because, in such cases, the prejudice is not in the *outcome* of the proceeding but in the *forfeiture* of it. *People v. Lancaster*, 2018 COA 168, ¶ 11 (citing *Long*, 126 P.3d at 286-87). But Johnston did not lose his right to a direct appeal. In fact, Johnston filed a direct appeal, which resulted in his convictions being affirmed. Johnston cannot

dispense with his obligation to demonstrate prejudice based on the rule applied in *Baker* and *Long*.

¶ 20     Instead, there are only two possible consequences flowing from trial counsel's allegedly deficient performance: (1) if the appellate court were to determine that counsel's conduct amounted to waiver, Johnston would lose the right to raise an appellate claim that the trial court erred by failing to remove Juror R, *see People v. Johnson*, 2021 COA 102, ¶ 49 ("We do not review waived arguments."), *aff'd on other grounds*, 2023 CO 7; or (2) if the appellate court were to determine that counsel's conduct merely forfeited the claim, Johnston would lose the right to have the claim reviewed under a harmless error or constitutional harmless error standard rather than under the plain error standard, *see People v. Rediger*, 2018 CO 32, ¶ 40 (Appellate courts "may review a forfeited error under the plain error standard."). To demonstrate prejudice under either scenario, Johnston must show a reasonable probability that, had his claim been preserved, it would have succeeded on appeal. *See Dunlap*, 173 P.3d at 1063; *cf. People v. Trujillo*, 169 P.3d 235, 239 (Colo. App. 2007) (the defendant failed to show prejudice from appellate counsel's allegedly deficient performance in failing to raise

certain claims of error because he would not have prevailed on the additional issues); *Long,* 126 P.3d at 286 ("To demonstrate prejudice [in the context of a perfected appeal], the defendant must show a reasonable probability that, but for counsel's errors, [they] would have prevailed on the appeal.").

¶ 21 Because Johnston does not even attempt to argue that a properly preserved claim would have been successful on appeal, he has failed to demonstrate the requisite prejudice to sustain a claim for ineffective assistance of counsel. *See People v. Washington,* 2014 COA 41, ¶ 20 ("If a court determines that a defendant has failed to prove either prong of the Strickland analysis, it may deny an ineffective assistance claim without addressing the other prong."); *see also People v. Dyer,* 2019 COA 161, ¶ 39 ("[A]n appellate court may affirm a lower court's decision on any ground supported by the record . . . .").[2]

---

[2] Given how innocuous Agent Green's testimony was, we fail to see how the claim would have prevailed on appeal under any standard of reversal. Thus, we also agree with the postconviction court's reason for concluding that Johnston failed to demonstrate prejudice.

### 3. Failing to Consult with an Independent Forensic Expert

¶ 22    Johnston contends that trial counsel rendered ineffective assistance when she failed to consult with an independent forensic expert about the interpretation, timing, and significance of the victim's injuries. We conclude that Johnston has failed to demonstrate *Strickland* prejudice.

### a. Additional Background

¶ 23    At the Crim. P. 35(c) hearing, trial counsel testified that while she did not consider consulting an independent forensic expert concerning the timing of the gunshots, she agreed that "offering an expert opinion to the jury that [the victim] likely fired his gun prior to sustaining his injuries" would have been helpful to the defense's theory of self-defense. Johnston also called a forensic pathologist who offered several opinions concerning the sequence of events based on the location and directionality of the victim's wounds relative to where Johnston and Chatman sat in the vehicle. The postconviction court even allowed the expert to conduct a demonstration in the courthouse garage using the vehicle in which the crime occurred to support his opinion that the victim likely fired his gun first, leading Johnston to fire back in self-defense.

¶ 24    The postconviction court "found [the expert's] testimony to be speculative, hypothetical, and based on assumptions made by the expert to conform to the evidence or to the ultimate opinion rendered."  "Ultimately," the court observed, "[the expert] could not testify who fired first, could not opine as to what happened before the first shot was fired, and could not opine as to anything that took place outside of the car leading up to the alleged robbery."  The court concluded that trial counsel's failure to retain an independent forensic expert did not fall "outside the wide range of professionally competent assistance" and denied this claim.

b.    Johnston Has Failed to Demonstrate Prejudice

¶ 25    Johnston contends that counsel performed deficiently by failing to consult with an independent forensic expert because "offering an expert opinion that [the victim] likely fired his gun before sustaining his injuries could have helped *the self-defense theory*."  (Emphasis added.)  Even assuming counsel should have retained such an expert, we conclude that Johnston has failed to demonstrate that he was prejudiced.

¶ 26    Johnston was convicted of first degree felony murder, with robbery or attempted robbery as the predicate offense, pursuant to section 18-3-102(1)(b), C.R.S. 2009:

> A person commits the crime of murder in the first degree if . . . [a]cting either alone or with one or more persons, [they] commit[] or attempt[] to commit . . . robbery . . . , and, in the course of or in furtherance of the crime that [they are] committing, . . . the death of a person, other than one of the participants, is caused by anyone . . . .

"A person who knowingly takes anything of value from the person or presence of another by the use of force, threats, or intimidation commits robbery." § 18-4-301(1), C.R.S. 2024.  One attempts to commit a crime "if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense." § 18-2-101(1), C.R.S. 2024.  Thus, to convict Johnston of felony murder, the jury had to find that (1) Johnston committed or attempted to commit robbery, and (2) someone died during the commission or attempted commission of that crime.

¶ 27    For three reasons we conclude that Johnston failed to demonstrate a reasonable probability that, but for trial counsel's

15

allegedly deficient performance, the outcome of the trial would have been different. *See Dunlap*, 173 P.3d at 1063.

¶ 28　　First, the proposed forensic testimony pertaining to the timing and significance of the victim's injuries would have done nothing to undermine the jury's findings that (1) Johnston attempted[3] to rob the victim; and (2) during the attempted robbery, the victim was killed. Even if the victim shot first, that fact would be irrelevant to (1) whether Johnston knowingly took a substantial step toward taking something of value from the victim by the use of force, threats, or intimidation, *see* §§ 18-2-101(1), 18-4-301; or (2) whether the victim died, *see* § 18-3-102(1)(b), C.R.S. 2009. *See* CRE 401 (Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

---

[3] Johnston was charged with two counts of attempted aggravated robbery; he was not charged with robbery or aggravated robbery. The jury convicted him of one count of attempted aggravated robbery. Thus, we know that the jury found Johnston guilty of felony murder based on the predicate offense of *attempted* robbery.

16

¶ 29     Second, self-defense is not an affirmative defense to felony murder. *People v. Renaud*, 942 P.2d 1253, 1256 (Colo. App. 1996); *see* § 18-3-102(2), C.R.S. 2009 (containing the exclusive list of affirmative defenses to felony murder). Self-defense "may be available as an affirmative defense to a predicate felony but not as to the resulting death." *Renaud*, 942 P.2d at 1256. Johnston does not argue that he acted in self-defense in attempting to rob the victim, nor does he argue that trial counsel was ineffective for failing to argue self-defense as to the attempted aggravated robbery charges. Instead, Johnston argues that his expert's testimony "would have illustrated how [he] could not have fired the fatal shots first, not to support a 'self-defense' claim, but because if he had, [the victim] would not have been able to return fire given the extent of his injuries," which may have helped create reasonable doubt in the minds of the jurors. But Johnston has failed to explain, and we fail to see, how the forensic expert's testimony would have created a reasonable doubt regarding the elements of felony murder.

¶ 30     Third, even if trial counsel had consulted with the proposed forensic expert, we doubt the expert's testimony would have been admitted at trial given the postconviction court's assessment that

the testimony was speculative and hypothetical. *See Lorenzen v. Pinnacol Assurance*, 2019 COA 54, ¶ 51 ("A court may reject expert testimony that relies on bare assertions, subjective belief, or unsupported speculation."). If the evidence would not have been admitted, then it is difficult to see (and Johnston has not explained) how trial counsel's failure to consult with the expert could have affected the outcome of the proceeding. *See Dunlap*, 173 P.3d at 1063.

¶ 31 Thus, we conclude that Johnston has failed to demonstrate the requisite prejudice to sustain this claim of ineffective assistance of counsel. *See Washington*, ¶ 20; *see also Dyer*, ¶ 39.

### 4. Failure to Provide Mitigation Evidence

¶ 32 Finally, Johnston contends that his trial counsel provided ineffective assistance by failing to present the prosecution with age-related mitigating evidence during plea negotiations. Again, we perceive no prejudice.

### a. Additional Background

¶ 33 Prior to the start of trial, Johnston and the prosecution engaged in plea negotiations and "[came] close" to resolving the matter. According to Johnston's trial counsel, the prosecution

18

offered Johnston a plea deal requiring him to serve twenty-eight years in the custody of the Department of Corrections. Despite her recommendation that Johnston take the deal, Johnston rejected it, preferring instead to pursue an offer between twenty and twenty-four years.

¶ 34    Johnston was twenty years old at the time of the offense. At the postconviction hearing, Johnston's defense expert testified that Johnston was a "youthful offender," and competent criminal defense counsel would have gathered school records, social service records, or "as many records as possible" to provide evidence of diminished culpability relating to his age. When asked if the evidence he believed counsel should have discovered would have impacted the plea negotiations in Johnston's case, the expert replied, "Potentially, yes." Johnston's trial counsel conceded that she did not "present mitigation surrounding Mr. Johnston's age and brain development to the [prosecution]," but she "certainly [could] not say" whether the evidence would have made a difference in plea negotiations.

¶ 35    The postconviction court rejected Johnston's claim due to the "lack of any information that would indicate that any investigation

or presentation would have altered the negotiations in this case." The court explained that "[b]ased on the testimony at the hearing, negotiations took place and [Johnston] had a certain number which he considered to be acceptable, to which the prosecution did not agree." The court concluded that Johnston failed to "demonstrate there was a prejudice to [him] in failing to obtain this information."

### b. Johnston Has Failed to Demonstrate Prejudice

¶ 36 Johnston contends that his trial counsel provided ineffective assistance by failing to obtain and provide age-related mitigating information to the prosecution during plea negotiations. We agree with the postconviction court that Johnston has failed to demonstrate prejudice resulting from counsel's allegedly deficient performance. *See Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (the *Strickland* test applies to claims that defense counsel provided ineffective assistance in the plea-bargaining process).

¶ 37 Although Johnston offered expert testimony that mitigating evidence such as school or social service records would have "potentially" lowered the prosecution's offer, his argument ends there. Johnston points to a mitigation packet appended to his postconviction counsel's written closing argument for the Crim. P.

20

35(c) hearing, but he fails to explain how the evidence reflected in it would have influenced the plea negotiations. Indeed, he argues only that presenting the prosecution with such a mitigation packet "*might have* tipped the scales in favor of a [twenty to twenty-four]-year sentence offer that Mr. Johnston would have accepted."[4] (Emphasis added.)

¶ 38     To succeed on his claim, Johnston must show a reasonable probability that the outcome of the proceedings would have been different — that the prosecution would have made a lower offer *and* that he would have accepted it. *See Dunlap*, 173 P.3d at 1063. Even though "reasonable probability" is a "standard 'somewhat lower' than a preponderance of the evidence," *People v. Sifuentes*, 2017 COA 48M, ¶ 20 (quoting *Strickland*, 466 U.S. at 694), it still requires that the defendant prove more than a "mere possibility that counsel's errors affected the outcome," *Garcia*, 815 P.2d at 941. "Potentially" or "might have" does not satisfy the standard. In the

---

[4] In this part of his opening brief, Johnston says he would have accepted a twenty-six-year offer, but the balance of the record suggests that Johnston was seeking a plea agreement between twenty and twenty-four years, so the twenty-six-year offer reference appears to be a typo. The discrepancy does not impact our analysis.

end, we conclude that Johnston has failed to meet his burden to prove that his trial counsel's failure to present mitigating evidence to the prosecution during plea negotiations prejudiced him. Accordingly, we reject this ineffective assistance of counsel claim as well.

### III.   Disposition

¶ 39    We affirm the postconviction court's order.

JUDGE WELLING and JUDGE MOULTRIE concur.