The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Byron A. LOGGINS, Defendant–Appellant.

No. 96CA0154.

Colorado Court of Appeals, Div. I.

Oct. 29, 1998.

As Modified on Denial of Rehearing Dec. 17, 1998.

Certiorari Denied Aug. 16, 1999.*

---

* Justice SCOTT does not participate.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Paul Koehler, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Anthony Viorst, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Byron Loggins, appeals the judgment of conviction entered on a jury verdict finding him guilty of possession of a controlled substance. We affirm.

During the evening of January 15, 1995, police officers responded to a report that gunshots had been fired and found defendant lying on a porch with a serious gunshot wound. An ambulance was called and defendant was taken to University Hospital in Denver.

Following the standard procedure for treating trauma victims, emergency room personnel removed defendant's clothes and they observed a small piece of plastic sticking out from between defendant's buttocks. An attending doctor pulled on the visible plastic, which resulted in the removal of a plastic bag containing suspected cocaine. A paramedic turned the bag over to the police officer who had originally found defendant at the scene of the shooting, and the charges here at issue resulted.

## I.

■ Defendant first contends that the trial court erred in denying his challenge for cause to a prospective juror who knew one of the prosecution's witnesses, and that the error was compounded when the court reporter lost the stenographic notes of voir dire and the parties were unable to reconstruct that particular juror's exact words at a later hearing. Defendant maintains he is entitled to a new trial. We disagree.

■ A trial court must sustain a challenge for cause of a potential juror if there exists a "state of mind in the juror evincing enmity or bias toward the defendant or the state." But, if the court is satisfied that the potential juror will render a fair and impartial verdict according to the law and to the evidence submitted at trial, that person should not be disqualified. Section 16–10–103(1)(j), C.R.S. 1998; Crim. P. 24(b)(1)(X).

■ The court has broad discretion in deciding whether to grant or deny a challenge for cause to a potential juror, and a decision denying such a challenge will be set aside only if the record discloses a clear abuse of that discretion. *People v. Wright*, 672 P.2d 518 (Colo.1983). This standard recognizes that the trial judge is the only judicial officer able to assess fully the attitudes and state of mind of a potential juror by personal observation and to determine the significance of what may appear to be inconsistent or self-contradictory responses to difficult questions. *See People v. Russo*, 713 P.2d 356 (Colo. 1986).

■ An expression of concern by a potential juror regarding some facet of the case or about jury service does not mandate the automatic exclusion of such person for cause. *People v. Taggart*, 621 P.2d 1375 (Colo.1981). If the record adequately supports the trial court's decision to deny the challenge for cause, then the decision should not be reversed. *People v. Sandoval*, 733 P.2d 319 (Colo.1987).

■ Loss of a portion of the complete trial record does not automatically require reversal. Nonetheless, reversal is required when a defendant can show that the incomplete record "visits a hardship" upon him or her and prejudices the appeal. *People v. Killpack*, 793 P.2d 642, 643 (Colo.App.1990).

Here, because a portion of the court reporter's notes had been lost, the court held a hearing to reconstruct, to the extent possible, the relevant portion of voir dire. *See* C.A.R. 10(c) and (e) (discussing procedure when transcript is unavailable). At that hearing, defense counsel proffered a written statement setting forth his recollection of what the prospective juror had stated during voir dire. Defense counsel recalled the prospective juror saying that he would try to treat the prosecution's witness, a police officer, like any other witness, but that it would be very difficult, given the cordial nature of the relationship between the two.

However, the prosecutor's statement at the reconstruction hearing was that he would not have opposed the defendant's challenge for cause *if* the prospective juror's statements were as set forth by defense counsel.

The trial judge who presided over defendant's trial testified at the reconstruction hearing that: (1) in deciding whether a prospective juror harbored any bias which would affect his or her impartiality, the judge normally examined demeanor and body language as well as the prospective juror's statements; and (2) the judge was convinced by this prospective juror's statements that, whatever may have been his relationship with the prosecution's witness, the prospective juror could put that aside and decide the case fairly.

The partial record of voir dire supports this conclusion by the trial court. It reflects

the following exchange between the court and the prospective juror:

> JUROR: I am a neighbor of [the officer].
>
> COURT: Will that influence your decision, suppose he takes the stand, will you give more credibility to his testimony because he is a neighbor or less?
>
> JUROR: No, sir.

In *People v. Zurenko,* 833 P.2d 794 (Colo. App.1991), upon which defendant relies, the panel held that a prospective juror should have been excused for cause after admitting that she was familiar with the prosecution's expert witness, and that she would be more inclined to believe that witness.

In contrast, here, the trial court was persuaded that the prospective juror could be fair and impartial. Because the record as a whole supports the trial court's determination that defendant's challenge for cause should have been denied, we thus perceive no abuse of discretion by the court in so ruling.

## II.

Next, defendant contends the trial court erred in denying his motion to suppress evidence discovered as a result of what defendant characterizes as "an unconstitutional body cavity search." He asserts that the actions of the paramedic and emergency room doctor in removing the baggie of cocaine from between his buttocks constituted an unreasonable search. In response, the People maintain that no search occurred at all.

### A. No Search

■ The People's contention that no search occurred under these circumstances is supported by court decisions that have interpreted the phrase "searches and seizures" in the Fourth Amendment to regulate the type of conduct designed to elicit a benefit for the government in an investigatory or, more broadly, an administrative capacity. *United States v. Attson,* 900 F.2d 1427 (9th Cir. 1990). *See New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (Fourth Amendment applies to conduct of governmental officials acting in various civil capacities but primarily involving activities of an investigative or administrative nature). Governmental conduct not actuated by an investigatory or administrative purpose has not been considered to be a search or seizure for purposes of the Fourth Amendment.

Thus, in *United States v. Attson, supra,* the court held that because a government-employed physician who attended defendant after a vehicle accident acted for a medical purpose and did not intend to benefit the government in its investigative or administrative capacity, the taking of defendant's blood sample was not a "search or seizure" under the Fourth Amendment.

University Hospital has been held to be a public entity, *Colorado Association of Public Employees v. Board of Regents,* 804 P.2d 138 (Colo.1990), and the People do not quarrel with defendant's assertion that the actions of the medical personnel employed there constituted state action.

Here, it is undisputed that the hospital's medical personnel were following standard hospital procedures used for treating trauma victims brought into the emergency room. Their conduct was not actuated by an investigatory or administrative purpose.

Accordingly, we conclude that there was no search or seizure within the meaning of the Fourth Amendment or Colo. Const. art. II, §7. *See United States v. Attson, supra.*

### B. Medical Emergency Exception

■ Even if we were to agree with defendant that a search had occurred within the meaning of the Fourth Amendment or Colo. Const. art. II, §7, we would still reject his contention that his constitutional rights were violated.

■ The medical emergency exception is a variant of the exigent circumstances doctrine and creates an exception to the prohibition against warrantless searches. The exception recognizes that it is reasonable for public officials to respond to a medical emergency, even over the injured party's objections. *See People v. Wright,* 804 P.2d 866 (Colo.1991) (discussing medical emergency exception to the warrant requirement).

Consequently, courts have held that any evidence revealed by treatment provided in the course of that emergency is not within the scope of the constitutional prohibition against warrantless searches and is not illegally obtained. 3 W. LaFave, *Search & Seizure* §5.4(c) (1996). *See also United States v. Borchardt*, 809 F.2d 1115 (5th · Cir.1987)(if reasonable and good faith intrusion is made to assist person who is in imminent danger of physical harm, evidence of crime discovered thereby is admissible in criminal proceedings).

In applying such an exception, the courts have recognized that a warrantless search has occurred, but have justified it based on the existence of an emergency situation which posed a threat to the life or safety of the persons searched or others. *People v. Wright, supra.*

As noted, it was only during the course of emergency treatment and diagnosis that the medical personnel here discovered the cocaine and that discovery was unexpected and entirely incidental to the medical purpose for the treatment. *See United States v. Borchardt, supra,* 809 F.2d at 1118 (court assumed that injection of a drug incidentally resulting in the regurgitation of evidence was a "search" within meaning of Fourth Amendment, but held "that it was reasonable given the existence of a life-threatening emergency.").

We therefore conclude that, because the cocaine was discovered during treatment provided to the defendant in the course of a medical emergency and was justified by exigent circumstances, defendant's right to be free from an unreasonable search and seizure was not violated. *See People v. Wright; State v. Lehl,* 231 Neb. 906, 438 N.W.2d 505 (1989) (drug paraphernalia accidentally discovered by physician during treatment of defendant in hospital emergency room was not product of illegal search). *Cf. State v. Brockman,* 231 Neb. 982, 439 N.W.2d 84 (1989) (cocaine found in packet between defendant's buttocks by doctor during emergency medical examination was inadvertently found, and because police officer was present where he had a right to be, seizure of evidence held admissible under plain view doctrine).

III.

▇▇ Defendant next contends the cocaine should have been suppressed because the officer to whom it was delivered in the hospital was outside his jurisdiction at the time. We disagree.

Defendant relies on two Colorado statutes. The first statute, §16–3–106, C.R.S.1998, applies solely to extraterritorial arrests and authorizes police officers in pursuit of an offender to continue that pursuit beyond the boundaries marking the officer's territorial jurisdiction.

Here, the shooting occurred in Aurora and the officer from that jurisdiction was not pursuing or seeking to arrest defendant. The officer did not even search defendant, but had merely followed him to the hospital for emergency treatment.

▇▇ In any event, even assuming a statutory violation, the evidence clearly shows that such violation was not willful. *See People v. Lindsey,* 805 P.2d 1134 (Colo.App.1990) (no suppression of evidence required where extraterritorial arrest occurred after police conducting investigatory interview serendipitously realized defendant was in the apartment.)

Section 16–3–305(1), C.R.S.1998, also cited by defendant, applies to the execution of search warrants. Because there was no execution of a search warrant, the statute has no applicability here.

IV.

▇▇ Defendant next contends the trial court should have dismissed the case or imposed other sanctions based upon the prosecution's failure to provide the defense with mandatory discovery information. Again, we disagree.

Crim. P. 16 governs discovery in a criminal proceeding and outlines the procedures the parties are required to follow. Certain information must be disclosed without a formal request, and Crim. P. 16(V)(a) and related

rules provide for sanctions in the event that the discovery rules are not followed.

Crim. P. 16(III)(g) states:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed or enter such other order as it deems just under the circumstances.

■ The rule gives the trial court broad discretion in determining the appropriate remedies for violations under the circumstances. *See People v. Pronovost,* 773 P.2d 555 (Colo.1989).

■ Dismissal of criminal charges for reasons other than the inability to prove them is a highly serious consequence, justifiable only in furtherance of the most important principles. *People v. District Court,* 808 P.2d 831 (Colo.1991).

■ When exercising its discretion in fashioning remedies for violations of Crim. P. 16, the court should impose the least severe sanction that will ensure full compliance with the court's discovery orders. *People v. Cobb,* 962 P.2d 944 (Colo.1998); *People v. District Court,* 793 P.2d 163 (Colo.1990). However, an order imposing sanctions will amount to an abuse of discretion only when the order is manifestly arbitrary, unreasonable, or unfair. *People v. Cobb, supra.*

Here, the trial court found a technical violation of Crim. P. 16 because the prosecution had failed to turn over the information earlier. However, it also found that the contents of the material were not exculpatory to the defendant and it determined that the appropriate remedy was to grant defendant a continuance. The court conditioned such a continuance on defendant's waiver of speedy trial because otherwise the trial would have to be held within one week of the sanctions hearing. And, it also stated that the waiver of speedy trial would only be to the date of the continuance. However, defendant refused to waive his right to speedy trial.

Given the scope of the violation and the nature of the material involved, we conclude that the trial court's ruling was not arbitrary, capricious, or unfair under these circumstances, and we therefore perceive no abuse of discretion. *See People v. Cobb, supra.*

### V.

■ Defendant next contends the trial court erred in admitting evidence of drug distribution which defendant claims was unfairly prejudicial and irrelevant. We disagree.

Defendant contends that the admission of a pager, a large sum of money, and a calculator, which were found on his person, was unfairly prejudicial because they pertained to drug distribution and not possession. However, the court found the evidence relevant to the issue of possession, especially considering defendant's theory of the case that the drugs had been planted on his person.

■ The admission of relevant evidence is strongly favored, and in assessing a trial court's ruling admitting evidence, the reviewing court must accord the evidence its maximum probative value and its minimum prejudicial impact. *People v. Gibbens,* 905 P.2d 604 (Colo.1995).

Applying those principles here, we perceive no abuse of discretion in the court's admission of the challenged evidence.

### VI.

■ Finally, defendant contends that his conviction must be reversed because, in addition to the standard instruction on credibility of witnesses, the trial court gave a separate jury instruction regarding the weight and credibility to be accorded defendant's out-of-court statements. We disagree.

■ Whether additional written jury instructions may be given which properly state the law and fairly and adequately cover the issues presented is a matter committed to the sound discretion of the trial court. *People v.Burke,* 937 P.2d 886 (Colo.App.1996).

■ While it is generally unnecessary and inappropriate to give the jury a separate instruction on the credibility of the defendant

as a witness, the giving of such an instruction does not constitute reversible error. *People v. Hankin,* 179 Colo. 70, 498 P.2d 1116 (1972).

Here, the court first gave the standard credibility instruction which asked the jury carefully to consider "the testimony given and the circumstances under which each witness has testified." *COLJI–Crim.* No. 3:06 (1983). The defendant objected to an additional credibility instruction, asserting only that the additional instruction which referred to defendant's out-of-court statements was covered by the credibility of witnesses instruction.

However, defendant did not testify at trial, and the court apparently determined that the general credibility instruction regarding witnesses at trial was insufficient to cover the issue properly. It thus gave the following special credibility instruction pertaining to defendant's out-of-court statements which had been admitted at trial:

Although out-of-court statements of the defendant have been admitted into evidence, it is the sole prerogative of the jury to determine what weight, if any, is to be given to the out-of-court statements and any testimony directly related to the statements.

Contrary to defendant's contention, defendant's statements were not covered by the standard credibility of witnesses instruction, nor did the special instruction cast doubt on the veracity of defendant's out-of-court statements. It merely instructed the jury that they were to determine their weight as they would any statements, and that they were *not required* to accept defendant's statements as true.

Accordingly, we reject defendant's contention that reversal is required based on the giving of the special instruction.

Judgment affirmed.

Judge METZGER and Judge PLANK concur.