The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Richard S. CARMICHAEL, Defendant–Appellant.

No. 02CA0719.

Colorado Court of Appeals, Div. III.

Feb. 8, 2007.

As Modified on Denial of Rehearing May 3, 2007.

Certiorari Granted April 7, 2007.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2006.

John W. Suthers, Attorney General, Katherine J. Gillespie, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Karen N. Taylor, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge FURMAN.

Defendant, Richard S. Carmichael, appeals from the judgment of conviction entered upon jury verdicts finding him guilty of sexual assault on a child by one in a position of trust, sexual assault on a child, attempted third degree assault, and contributing to the delinquency of a minor. We affirm.

## I. Background

According to the prosecution's evidence, in early 2000, Carmichael's daughter, S.C., invited two girlfriends over to spend the night. One of the girls, A.B., testified that the three girls fell asleep in the basement around one a.m., and that she was awakened by a flashlight shining in her eyes. The other two girls continued to sleep, but A.B., pretending to sleep herself, saw Carmichael approach thirteen-year-old, R.R., lift her shirt, and rub her breast. R.R. did not wake up.

A.B. testified that, a few moments later, Carmichael stood up and turned off the flashlight. A.B. also reported hearing a noise that did not wake the other girls. The next morning A.B. told R.R. what had happened, and the girls reported the incident to a hotline two months later.

Carmichael testified that he and his wife fell asleep in their bed around one a.m. and that some time later, they were awakened by a loud noise. Carmichael's wife asked him to investigate and, after getting a flashlight, they began to check the house. He said he checked the basement and looked into, but did not enter, the room in which the girls were sleeping. He said he and his wife

returned to bed after he completed his search.

Carmichael's wife corroborated his testimony, adding that while he searched the basement, she stood at the top of the basement stairs. She testified that she never lost sight of him and that the next morning, she found a fallen window blind in the basement and assumed it had caused the noise that had awakened them.

In June 2000, S.C. again invited girlfriends over to spend the night, including thirteen-year-old J.V.N. J.V.N. testified that she was playing in the basement with other children and sometime that evening, she went upstairs and saw Carmichael. He offered her an alcoholic drink, and J.V.N. testified that over the course of the evening she consumed four to five shots of liquor while with Carmichael.

J.V.N. said that later that same evening, she went upstairs to sleep on the couch. She saw Carmichael lying on a loveseat in the same room and, as she lay down to go to sleep, he got a blanket from the hallway, covered her with it, and removed her shoes. She testified that during the next few minutes, while she pretended to sleep, Carmichael touched her hand several times, lifted her shirt, and touched her stomach. She pretended to wake up, and Carmichael returned to the loveseat. J.V.N. then returned to the basement, told S.C. what had happened, and reported the incident to the police the next night.

Carmichael testified that he might have brushed her hands or stomach while he covered her with the blanket, but he denied touching J.V.N. in any other manner.

The jury acquitted Carmichael on all charges of sexual assault involving J.V.N., but convicted him of the offenses involving R.R. The court sentenced him to intensive supervised probation for twenty years to life.

## II.   Ineffective Assistance of Counsel

Carmichael first contends he was denied the effective assistance of counsel during plea negotiations with the prosecution. We disagree.

Before the preliminary hearing, the prosecution offered a plea bargain which included Carmichael's receiving a ten-year probationary sentence in exchange for his guilty plea to sexual assault, a class four felony. His attorney told him he would likely receive a probationary sentence if he went to trial, but did not advise Carmichael he was subject to sentencing provisions under the Sex Offender Lifetime Supervision Act, § 18–1.3–1004, C.R.S.2006 (SOLSA). That statute provides, in pertinent part:

> (1) (a) Except as otherwise provided in this subsection (1) and in subsection (2) of this section, the district court having jurisdiction shall sentence a sex offender to the custody of the department for an indeterminate term of at least the minimum of the presumptive range specified in section 181.3401 for the level of offense committed and a maximum of the sex offender's natural life.
>
> . . . .
>
> (2) (a) The district court having jurisdiction . . . . may sentence a sex offender to probation for an indeterminate period of at least ten years for a class 4 felony or twenty years for a class 2 or 3 felony and a maximum of the sex offender's natural life. . . .

Section 18–1.3–1004.

On the basis of his attorney's inaccurate advice, Carmichael filed a motion for new trial contending that he would have accepted the prosecution's plea offer, and not gone to trial, had he been informed of his potential life sentence. After a hearing, the trial court denied Carmichael's motion finding that Carmichael did not show sufficient corroborating evidence to support his contentions. The court determined that Carmichael rejected the plea because he was maintaining his innocence. Accordingly, the court concluded that Carmichael did not show he was prejudiced by his attorney's advice. Carmichael asserts the same contentions on appeal. He thus contends his conviction must be reversed. We are not persuaded.

### A.   Standard of Review

The Sixth Amendment of the United States Constitution guarantees an accused

the right to effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *People v. Garcia,* 815 P.2d 937 (Colo.1991).

To obtain relief for a violation of this right, a defendant must establish both that counsel's performance was constitutionally deficient and that the deficient performance resulted in prejudice to the defendant. *See Strickland v. Washington, supra; People v. Garcia, supra; People v. Perry,* 68 P.3d 472, 477 (Colo.App.2002). This is a mixed question of fact and law. *People v. Garcia,* 815 P.2d 937 (Colo.1991), citing *Strickland v. Washington, supra,* 466 U.S. at 698, 104 S.Ct. at 2070.

Here, the parties do not dispute, the trial court found, and we agree that trial counsel rendered deficient performance in not informing Carmichael of SOLSA. We must therefore determine whether Carmichael has demonstrated prejudice as a result of that deficient performance. We conclude he has not.

In evaluating a claim of prejudice, a court should consider whether a defendant has shown a reasonable probability the prosecution made an offer, the defendant would have accepted it, and the trial court would have approved it. *People v. Sherman,* 172 P.3d 911 (Colo.App. 2006); *see* Crim. P. 11(f)(5) ("the judge in every case should exercise an independent judgment in deciding whether to grant charge and sentence concessions").

In this context, a defendant's allegations made after trial that, but for counsel's advice he or she would have accepted the plea offer, are subjective, selfserving, and insufficient to satisfy the *Strickland* test for prejudice, and must be corroborated by objective evidence. *See Paters v. United States,* 159 F.3d 1043, 1046 (7th Cir. 1998)(only objective evidence, not selfserving statements, will establish prejudice under *Strickland); United States v. Gordon,* 156 F.3d 376, 381 (2d Cir.1998); *Engelen v. United States,* 68 F.3d 238, 241 (8th Cir.1995); *In re Alvernaz,* 2 Cal.4th 924, 8 Cal.Rptr.2d 713, 830 P.2d 747, 756 (1992) (a defendant's self-serving statements after conviction are insuf-

ficient to show prejudice); *People v. Rissley,* 206 Ill.2d 403, 276 Ill.Dec. 821, 795 N.E.2d 174 (2003) (selfserving statements, standing alone, are insufficient to demonstrate the required prejudice); *State v. Hunter,* 140 N.M. 406, 143 P.3d 168, 176 (2006)(generally, a defendant's selfserving statements after conviction are insufficient to show prejudice).

In determining whether a defendant has corroborated the claim of prejudice with objective evidence, courts have considered such factors as: (1) whether counsel communicated a plea offer to the defendant, *see People v. Perry, supra,* 68 P.3d at 477; (2) the advice given by counsel, *see People v. Isham,* 923 P.2d 190, 194 (Colo.App.1995); (3) the disparity between the terms of the proposed and possible sentences, *see United States v. Day,* 969 F.2d 39 (3d Cir.1992); (4) the probable consequences of proceeding to trial, as viewed at the time of the plea offer, *see In re Alvernaz, supra,* 8 Cal.Rptr.2d 713, 830 P.2d at 756; (5) whether the defendant indicated he or she was amenable to negotiating a plea bargain, *see In re Alvernaz, supra,* 8 Cal. Rptr.2d 713, 830 P.2d at 756; (6) *unopposed* assertions by defense counsel that defendant's rejection of the plea offer was based on inaccurate advice, *see People v. Curry,* 178 Ill.2d 509, 227 Ill.Dec. 395, 687 N.E.2d 877, 888 (1997); and (7) defendant's stance at trial, *see In re Alvernaz, supra,* 8 Cal. Rptr.2d 713, 830 P.2d at 756.

### B. Application

Carmichael contends he showed a reasonable probability that he would have accepted the prosecutor's proffered plea bargain and pleaded guilty, and therefore objectively established prejudice in two ways: (1) he attached to his motion for new trial an affidavit from his trial counsel expressing an opinion that Carmichael rejected the plea bargain offer "[i]n reliance upon [counsel's] erroneous and/or incomplete advice"; and (2) he demonstrated a significant disparity between the proposed and possible sentences. We disagree.

Carmichael's statement in his motion for new trial that, had he been given accurate advice, he would have accepted the prosecu-

tion's plea offer, is subjective, selfserving, and insufficient in and of itself to establish prejudice. *See In re Alvernaz, supra.*

Further, Carmichael's contention is insufficiently corroborated by objective evidence. First, at the hearing on Carmichael's motion for new trial, his attorney testified that he had explained to him that (1) if he received probation, he would have to admit to the sexual assault allegations; (2) if he was given a prison sentence on a class 3 felony, it could be up to twelve years—or even longer—if the sentence was aggravated; and (3) he would probably be placed on probation if he went to trial and was convicted, but if he violated his probation, he would likely go to prison.

Second, Carmichael's attorney also testified that he did not explain SOLSA to Carmichael, but that Carmichael had "maintained his innocence as to the crimes charged against him," and that his having to admit to the crime as a condition of the sex offender probation "would be a problem."

Third, Carmichael rejected a probationary plea offer, and persisted in going to trial despite the possibility that in so doing, he faced a substantial prison term. *See Lewandowski v. Makel,* 949 F.2d 884, 889 (6th Cir.1991)(the question of prejudice may turn on the defendant's motivation in rejecting the plea offer).

Finally, Carmichael admitted the trial court advised him, at an earlier hearing, of the possible penalties for the charged offenses, including the possible penalties under SOLSA.

Hence, based on our independent review of Carmichael's contentions and the trial court proceedings, we conclude there is record support for the trial court's finding that Carmichael's decision to reject the plea offer was motivated by his hope for an acquittal at trial. For this reason, we further conclude Carmichael has failed to establish prejudice and, thus, has failed to establish that he was deprived of the effective assistance of counsel. *See In re Alvernaz, supra.* Because Carmichael was not prejudiced by counsel's erroneous advice, we need not determine whether the trial court would have approved the underlying plea. *See People v. Sherman, supra.*

### III. Challenge for Cause

Carmichael next contends the trial court abused its discretion in denying his challenge for cause to a prospective juror who showed bias. He maintains that the error was compounded by the court reporter's failure to transcribe fully the voir dire and by the parties' inability to reconstruct the voir dire. Carmichael further contends he has been prejudiced by the incomplete and inadequate transcripts because we are unable to determine whether the trial court properly denied his challenge for cause. We disagree.

A trial court must sustain a challenge for cause of a potential juror if there exists a "state of mind in the juror evidencing enmity or bias toward the defendant or the state." Section 16–10–103(1)(j), C.R.S.2006. If the court is satisfied the potential juror will render a fair and impartial verdict according to the law and the evidence at trial, however, that person should not be disqualified. Crim. P. 24(b)(1)(X); *People v. Loggins,* 981 P.2d 630, 633 (Colo.App.1998).

An expression of concern by a potential juror as to his or her ability to be impartial does not mandate automatic exclusion of the juror for cause. *People v. Taggart,* 621 P.2d 1375 (Colo.1981), *abrogated on other grounds by James v. People,* 727 P.2d 850 (Colo.1986). If the record adequately supports the trial court's decision to deny the challenge for cause, that decision will be upheld on appeal. *People v. Loggins, supra.*

Further, the loss of a portion of the trial record does not automatically require reversal. *People v. Loggins, supra.* To obtain relief on a substantive or procedural due process claim arising from an incomplete record, a defendant must demonstrate specific prejudice to the appeal resulting from the state of that record. *People v. Rodriguez,* 914 P.2d 230, 301 (Colo.1996); *see People v. Ellis,* 148 P.3d 205 (Colo.App.2006).

Carmichael filed his notice of appeal and designation of record in May 2002. Thereafter, he was granted several extensions of time to transmit the record because

the court reporter, Valeri Barnes, had failed to complete the necessary transcripts.

In September 2003, this court remanded Carmichael's case, along with several others, to the district court to determine what action should be taken to remedy Barnes's failure to comply with court timelines. Retired Supreme Court Chief Justice Anthony Vollack was appointed by the district court to oversee the remanded cases, and he conducted numerous hearings regarding the delays. He also hired several contract court reporters to assist Barnes in completing the transcripts.

In January 2004, Carmichael filed the available transcripts and a notice of incomplete record in this court.

In March 2004, this court again remanded the case to the trial court with directions to determine whether the record could be settled under C.A.R. 10(c) and (e).

In November 2005, Justice Vollack concluded the record in this case was "substantially complete and accurate."

The partial record of jury selection reflects the court conducted an unrecorded bench conference during the underlying trial, and denied Carmichael's challenge for cause to Juror H, but the portion of voir dire that includes the colloquy between the prosecutor and Juror H is not in the appellate record.

Nevertheless, the record shows that the trial court instructed the jurors about the presumption of innocence and asked whether, based on the nature of the charges, they would afford Carmichael that presumption. Juror H did not express any difficulty applying that presumption. The record also contains the trial court's findings detailing its reason for denying Carmichael's challenge for cause as to Juror H:

> COURT: At the bench conference at the completion of the voir dire questioning by the defense a challenge for cause was made as to Juror H based on the questioning and the answers given in her jury questionnaire.
>
> The particular question is, do you believe there is any reason why you could not be a fair and impartial juror in this case. And the answer was yes. And her written

statement was made then. If [so] please give your reasons. The reason is I have very strong feelings against people who commit crimes against children. That was the basis for the challenge for cause.

> The defense objected and I denied that challenge for cause. Subsequently, [Juror H] was [exc]used during a peremptory challenge, that would be the first peremptory challenge of the defense, and an objection has been made and we are making a record at this time.
>
> The court will find that based on the questions that were asked of [Juror H] during the voir dire examination by the prosecution that the Court is satisfied that [Juror H] does not have—at least she has very strong feelings about the charges and these kinds of crimes; that she did not have a bias for or against the prosecution [sic]. She expressed she would be able to follow the law and legal instructions given to the jury and to afford the defendant the presumption of innocence.
>
> Accordingly, I, therefore, find that I'm satisfied that this juror would be—would have been able to render an impartial verdict based solely upon the evidence [and] instructions of the court.

■ The trial court was in the best position to evaluate Juror H's demeanor, credibility, and sincerity in explaining her answer to the questionnaire; in stating her willingness to follow the instructions; and in stating that she would afford Carmichael the presumption of innocence. The court found the sole basis for Carmichael's challenge for cause was the answer Juror H gave in the jury questionnaire, which is included in the record on appeal. We therefore conclude that the record, while incomplete, supports the trial court's ruling denying Carmichael's challenge for cause, and we perceive no abuse of discretion by the trial court in so ruling. *See People v. Sandoval*, 733 P.2d 319 (Colo.1987) (if the record adequately supports the trial court's decision to deny the challenge for cause, the decision should not be reversed). Thus, contrary to Carmichael's contention, we conclude the record is sufficient to permit appellate review of his

argument that Juror H should have been disqualified for cause. Hence, he failed to show the requisite prejudice required for reversal. *See People v. Rodriguez, supra.*

## IV. Discovery Violation

Carmichael next contends the trial court violated his due process right to present a defense by excluding a witness from testifying on his behalf based on untimely endorsement. We disagree.

The right of a defendant to call witnesses in his defense is a fundamental component of due process. *People v. Castro,* 854 P.2d 1262 (Colo.1993) (citing *People v. Hampton,* 696 P.2d 765 (Colo.1985)). To ensure fairness in the criminal proceedings, however, both the prosecution and the defense must comply with the discovery rules under Crim. P. 16. *People v. Castro, supra.*

As relevant here, the defense must disclose at least thirty days before trial the name and address of any witness it intends to call. Crim. P. 16(II)(c). This rule is designed to prevent prejudice to the prosecution that may occur if the defendant endorses witnesses on the eve of trial. *People v. Castro, supra.*

When a discovery violation occurs, the trial court has broad discretion in fashioning an appropriate remedy. However, the court should impose the least severe sanction that will ensure full compliance with its orders. *People v. Dist. Court,* 664 P.2d 247 (Colo.1983).

A trial court's order imposing sanctions for discovery violations will not be overturned absent an abuse of discretion. An abuse of discretion exists where the order is manifestly arbitrary, unreasonable, or unfair. *People v. Daley,* 97 P.3d 295 (Colo.App. 2004).

In deciding whether it is appropriate to exclude the testimony of an unendorsed witness, the supreme court has delineated the limits of the trial court's discretion when excluding a defense witness after the defendant failed to timely endorse the witness. The trial court must consider (1) the reason for and degree of culpability associated with

the late endorsement; (2) the prejudice to the prosecution; (3) whether other events mitigate the prejudice to the prosecution; (4) whether there is a less drastic alternative; and (5) whether other relevant factors arise out of the case. *People v. Pronovost,* 773 P.2d 555 (Colo.1989).

Here, the trial court did not undertake the analysis required by *People v. Pronovost, supra,* but we nonetheless conclude its ruling was not manifestly arbitrary, unreasonable, or unfair.

Investigator Ann Smith was called by the prosecution to testify about a telephone interview she had with S.C. Investigator Smith testified that she did not want Carmichael to hear his daughter's answers to the questions and asked him to leave the room during the telephone interview. Smith said that she heard Carmichael say, "[D]o you understand me?" in a harsh voice before he passed the phone to S.C.; after she began speaking with S.C., she heard someone in the background; she asked S.C. who was there; and S.C. told Smith her father was standing next to her.

To rebut this testimony, Carmichael attempted to call Steve Ridley, who was at Carmichael's home when Smith called S.C. But the trial court excluded this testimony, finding that Carmichael had failed to endorse Ridley pursuant to the discovery rules, had disregarded Crim. P. 16, and had failed to list Ridley as a witness on the parties' joint witness list presented to the trial court the day before the trial. Smith was listed as a prosecution witness as early as February 2001, and Carmichael had ample time to procure a witness to rebut her testimony.

Because Carmichael's late endorsement violated the discovery rules, and he failed to articulate a reason why it was so late, we perceive no abuse of discretion by the court in imposing a sanction and disallowing the testimony of the defense witness.

In any event, Ridley was not a key witness whose exclusion materially affected the trial. *See People v. Lopez,* 946 P.2d 478 (Colo.App. 1997). According to Carmichael's offer of proof, Ridley would have testified that he

was at the Carmichael home during the phone call, that Carmichael left the room as asked, and that the conversation between S.C. and Smith was private. Thus, he would have rebutted only that portion of Smith's testimony that she believed Carmichael was standing with S.C. during the telephone interview, even after he was asked to leave the room.

Further, Smith's testimony was rebutted by S.C., who subsequently testified that the only person in the room with her during the interview was her grandmother, and that her father left the room as asked.

Under these circumstances, we conclude the net effect of the court's discovery ruling was simply to exclude evidence cumulative to that of another witness and, thus, the trial court's ruling did not constitute an abuse of discretion or unduly prejudice Carmichael's due process right to present a defense. *See People v. Fuller*, 788 P.2d 741, 746 (Colo. 1990).

### V. Prosecutorial Misconduct

Carmichael next contends the prosecutor committed misconduct during closing argument because she repeatedly expressed her personal opinion regarding the credibility of the witnesses. We are not persuaded.

Because Carmichael made no objection to the alleged prosecutorial misconduct at trial, we review for plain error. *Harris v. People*, 888 P.2d 259 (Colo.1995); *see* Crim. P. 52(b).

■ While counsel may draw reasonable inferences as to the demeanor and credibility of witnesses, *People v. Constant*, 645 P.2d 843 (Colo.1982), it is improper for counsel to express a personal opinion as to the veracity of witnesses. *People v. Wright*, 182 Colo. 87, 511 P.2d 460 (1973); *People v. Williams*, 996 P.2d 237 (Colo.App.1999); *see also Wilson v. People*, 743 P.2d 415 (Colo.1987).

■ Contentions of improper argument must be evaluated in the context of the argument as a whole and in light of the evidence. Such evaluations are best done by the trial court, and rest solely within its discretion. *People v. Gutierrez*, 622 P.2d 547 (Colo.1981).

■ Whether closing argument is improper depends on the nature of the comment and on whether the jury's attention has been directed to something that it is not entitled to consider. *People v. Constant, supra*, 645 P.2d at 846. Inappropriate prosecutorial comments, standing alone, will not justify reversing a criminal conviction obtained in an otherwise fair proceeding. *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

■ Here, during closing argument, the prosecutor told the jury:

> If you take what was said as true, that if you believe the girls, they have given you all the information that supports each and every element of the crimes charged, and we have just gone through that. The only thing left for you to decide is, if the girls are telling the truth and there are a number of things—there are a number of reasons that tell you that these girls are telling you the truth.

The prosecutor then outlined the evidence each witness presented, the potential bias of each, and how this should be factored into the jurors' assessment of the case. Thus, the prosecutor's comments were linked to the evidence presented at trial.

The prosecutor's acknowledgment that there were two conflicting versions of the events was not improper, nor was her suggestion that someone was not telling the truth. *See People v. Alengi*, 114 P.3d 11, 17 (Colo.App.2004) (when the prosecutor stated that defendant's testimony was incredible, she was articulating discrepancies in the evidence), *aff'd*, 148 P.3d 154 (Colo.2006). The jury obviously disregarded at least one girl's testimony because it acquitted Carmichael of the sexual assault allegation involving J.V.N.

We therefore conclude the prosecutor's statements did not constitute plain error.

### VI. Insufficient Evidence of Sexual Assault

Carmichael next contends there was insufficient evidence to support the jury's verdicts of sexual assault on a child by one in a position of trust and sexual assault on a child. We disagree.

When the sufficiency of the evidence is challenged on appeal, the reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt. *People v. Sprouse*, 983 P.2d 771 (Colo.1999); *Kogan v. People*, 756 P.2d 945 (Colo.1988), *abrogated on other grounds by Erickson v. People*, 951 P.2d 919 (Colo.1998).

In reviewing a challenge to the sufficiency of the evidence, we are guided by the following principles: (1) the prosecution must be given the benefit of every reasonable inference that might fairly be drawn from the evidence; (2) the determination of the credibility of the witnesses is solely within the province of the fact finder, and it is the fact finder's function in a criminal case to consider and determine what weight should be given to all parts of the evidence and to resolve conflicts, testimonial inconsistencies, and disputes in the evidence; and (3) an appellate court is not permitted to act as a thirteenth juror and set aside a verdict because it might have drawn a different conclusion had it been the trier of fact. *See Kogan v. People, supra; People v. Martinez*, 36 P.3d 154 (Colo.App.2001).

A person commits sexual assault on a child by one in a position of trust when he or she "knowingly subjects another not his or her spouse to any sexual contact . . . if the victim is a child less than eighteen years of age and the actor committing the offense is one in a position of trust with respect to the victim." Section 18–3–405.3(1), C.R.S.2006.

A person commits sexual assault on a child when he or she "knowingly subjects another not his or her spouse to any sexual contact . . . if the victim is less than fifteen years of age and the actor is at least four years older than the victim." Section 18–3–405(1), C.R.S.2006.

"Sexual contact" means "the knowing touching of the victim's intimate parts by the actor . . . or the knowing touching of the clothing covering the immediate area of the victim's or actor's intimate parts if that sexual contact is for the purposes of sexual arousal, gratification, or abuse." Section 18–3–

401(4), C.R.S.2006. "Intimate parts" include the breast of any person. Section 18–3–401(2), C.R.S.2006.

Here, the testimony of A.B. established that thirteen-year-old R.R. was a guest at Carmichael's house and was sleeping when he approached her. A.B. testified that she observed Carmichael crouch down close to R.R., lift her shirt, and rub her breast. R.R. never testified that Carmichael touched her, because she was asleep the entire time Carmichael was in the basement.

Even if A.B. changed her story, as Carmichael asserts, it was within the province of the jury to decide the weight to be given to conflicting evidence. *See People v. Franklin*, 645 P.2d 1, 4 (Colo.1982) (it is only when a witness's testimony is "palpably incredible and . . . totally unbelievable" that the court may reject it as a matter of law (quoting *People v. Rivas*, 197 Colo. 131, 136, 591 P.2d 83, 86 (1979))).

Because the evidence could support a finding by a rational trier of fact that the prosecution had proved sexual assault beyond a reasonable doubt, we conclude it was sufficient to support the jury's verdicts.

## VII. Delay of the Appeal

Carmichael next contends the inordinate delay in this appeal violates his due process rights to a speedy and timely appeal. We disagree for the reasons set forth in *People v. Whittiker*, 181 P.3d 264 (Colo.App. No. 01CA2340, Nov. 30, 2006), 2006 WL 3437556.

We conclude Carmichael has not shown that the delay impaired his ability to present, or our ability to review, any of his substantive contentions, nor has he shown that a prompt resolution of his appeal would have yielded a different outcome.

## VIII. Transcript Errors

Finally, Carmichael contends his due process rights have been violated because the transcript is incomplete and contains such inaccuracies that he cannot obtain a meaningful appeal. He maintains that the following were errors or omissions in the tran-

scripts: (1) the record of voir dire contained 173 instances where the record attributes statements to the wrong party, was incomplete, or was fabricated; and (2) portions of the court's findings and rulings on Carmichael's motion for a new trial are missing, because they are designated as "unreadable" in the reconstructed transcript. We disagree.

In each instance in which the alleged errors appear, we have interpreted the transcript consistently with Carmichael's contentions. Nevertheless, we conclude that the existing transcripts are sufficiently complete and reliable to enable an intelligent review of Carmichael's substantive contentions, and that he has not been deprived of his due process right to obtain a meaningful appeal. *See People v. Whittiker, supra* (addressing contentions of error concerning transcript errors or omissions attributable to court reporter Barnes).

Carmichael has had the assistance of counsel during the record reconstruction hearings, and he has not alleged the specific manner in which he was prejudiced, as required by *People v. Rodriguez, supra.*

The judgment is affirmed.

Judge TAUBMAN and JUDGE RUSSEL concur.