2015 COA 161

The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Luz del Carmen MORONES–QUINONEZ, Defendant–Appellant.

Court of Appeals No. 14CA1493

Colorado Court of Appeals, Div. I.

Announced November 5, 2015

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S. 2015.

City and County of Denver District Court, No. 11CR164, Honorable Ann B. Frick, Judge.

Cynthia H. Coffman, Attorney General, Joseph G. Michaels, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Hernandez & Associates, P.C., Arnulfo D. Hernández, Christine M. Hernández, Denver, Colorado, for Defendant–Appellant.

Opinion by JUDGE HARRIS

¶1 Luz del Carmen Morones–Quinonez appeals the district court's order summarily denying her Crim. P. 35(c) motion for postconviction relief based on a claim of ineffective assistance of counsel. Ms. Morones asserts that she sufficiently alleged that her lawyer misadvised her of the immigration consequences of her guilty plea to criminal impersonation and that, if she had been properly advised, she would have insisted on proceeding to trial. We reverse and remand for an evidentiary hearing.

## I. Background

¶2 Ms. Morones was charged with one count of criminal possession of a forged instrument, § 18–5–105, C.R.S.2015, and one count of criminal impersonation, § 18–5–113(1)(3), C.R.S.2015, after police officers conducting a traffic stop discovered a false identification card in her possession. Ms. Morones hired a lawyer whose practice focused on immigration and criminal law to represent her in both her criminal case and the removal proceedings that had been initiated shortly after the criminal charges were filed.

¶3 According to her motion, Ms. Morones was adamantly opposed to accepting any plea offer that would make her ineligible for relief from deportation. Her lawyer recommended that she plead guilty to criminal impersonation, assuring her that she would be "just fine" in immigration court, as criminal impersonation, unlike identity theft, was a "minor felony," and would not affect her immigration case.

¶4 With those assurances, Ms. Morones pleaded guilty to criminal impersonation. She was later ordered deported by an immigration law judge. Through her lawyer, she requested cancellation of removal, but that request was denied based on her conviction.

¶5 Ms. Morones then filed her Crim. P. 35(c) motion, alleging that her counsel had provided ineffective assistance by affirmatively misadvising her of the immigration consequences of her guilty plea. She further alleged that, had she been properly advised, she would have rejected the plea offer and proceeded to trial. The district court denied Ms. Morones's motion without a hearing, concluding that, as a matter of law, Ms. Morones could not establish prejudice from her counsel's allegedly deficient performance because, even if counsel had misadvised Ms. Morones, the written guilty plea advisement and the court's oral advisement at the Crim. P. 11 providency hearing necessarily cured any deficiencies. We conclude that Ms. Morones is entitled to a hearing on her motion.

## II. Legal Analysis

### A. Standard of Review

¶6 Crim. P. 35(c) allows a defendant to challenge a judgment of conviction on the ground that it was obtained in violation of her constitutional rights. Crim. P. 35(c)(2)(I). The merits of such a challenge—in this case, whether Ms. Morones is entitled to withdraw her guilty plea based on the alleged ineffective assistance of her counsel—should be addressed, in the first instance, by the trial court. At this stage, our review is limited to determining whether Ms. Morones was entitled to a hearing where she could attempt to prove her claim. Cf. People v. Simpson, 69 P.3d 79, 80 (Colo.2003) (whether the defendant's guilty plea was knowing and voluntary could not be decided by court of appeals based on Rule 35(c) motion, but had to be determined by trial court after an evidentiary hearing). She is entitled to a hearing so long as she has asserted facts in her postconviction motion that, if true, would provide a basis for relief under Crim. P. 35. White v. Denver Dist. Court, 766 P.2d 632, 635 (Colo.1988). We review de novo the sufficiency of her factual allegations. People v. Martinez–Huerta, 2015 COA 69, ¶8, 363 P.3d 754.

### B. Discussion

¶7 To determine whether a defendant received ineffective assistance during the plea

process in violation of her constitutional right to counsel, we apply the two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668, 687–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Specifically, a defendant must show (1) counsel's representation fell below an objective standard of reasonableness and (2) a reasonable probability exists that counsel's deficient performance prejudiced the defendant, meaning that "but for counsel's errors," she would not have pleaded guilty but instead would have proceeded to trial. *People v. Kazadi,* 284 P.3d 70, 73 (Colo.App.2011) (quoting *Hill v. Lockhart,* 474 U.S. 52, 57–59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)), *aff'd,* 2012 CO 73, 291 P.3d 16.

¶ 8 The district court concluded that, as a matter of law, Ms. Morones could not establish prejudice, and denied the motion on that basis, without addressing the allegations of counsel's deficient performance. *See People v. Vicente–Sontay,* 2014 COA 175, ¶ 21, 361 P.3d 1046 (if court determines that the defendant has failed to prove either prong of *Strickland* analysis, it may deny the claim without addressing the other prong). Because, as we explain below, we disagree that Ms. Morones's prejudice allegation fails as a matter of law, we turn briefly to the sufficiency of Ms. Morones's deficient performance allegation.

¶ 9 Ms. Morones alleged that her lawyer misrepresented the consequences of her guilty plea, assuring her that a conviction for criminal impersonation would have no effect on her then-pending removal proceedings. The immigration consequences of a conviction for criminal impersonation were unclear at the time Ms. Morones pleaded guilty to that charge. *Id.* at ¶ 35; *see also People v. Price,* 240 P.3d 557, 564–65 (Colo.App.2010) (counsel's performance must be evaluated from counsel's perspective at the time of the challenged conduct). Still, even given the ambiguity in the law, as the People acknowledge, Ms. Morones's lawyer had an obligation to warn her that, at a minimum, her plea "may carry a risk of adverse immigration consequences." *See Vicente–Sontay,* ¶ 35 (citing *Padilla v. Kentucky,* 559 U.S. 356, 369, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010)). Counsel's failure to do so would constitute ineffective assistance.

¶ 10 Accordingly, Ms. Morones has sufficiently pleaded deficient performance by her counsel. We recognize that Ms. Morones's lawyer has a different recollection of events: in connection with Ms. Morones's Rule 35(c) motion, he filed an affidavit in which he asserted that he had advised Ms. Morones that "there was a possibility" that her conviction "would cause problems in her immigration case." But his contrary assertion does not undermine the sufficiency of Ms. Morones's allegations. What Ms. Morones's lawyer said and whether his advisement, if given, satisfied the standard under *Vicente–Sontay* are issues that must be resolved at a hearing.

¶ 11 We now turn back to the prejudice prong. Ms. Morones alleged, as she must under *Lockhart,* 474 U.S. at 59, 106 S.Ct. 366, that her counsel's constitutionally deficient performance resulted in prejudice because, had she been properly advised, she would have rejected the plea offer and insisted on going to trial. The district court found that, as a matter of law, Ms. Morones's prejudice allegation was insufficient.

¶ 12 To the extent the district court's conclusion was based on what it termed the "self-serving" nature of the claim, we disagree that, at this stage, Ms. Morones has a duty under *People v. Carmichael,* 206 P.3d 800 (Colo.2009), to provide corroborating evidence to support her prejudice allegation. *Carmichael's* rule requiring independent evidence that the defendant would have forgone her guilty plea had counsel properly advised her applies only after an evidentiary hearing, where the defendant has an opportunity to present such evidence. *Id.* at 807–08. But even so, in the context of a decision to forgo a guilty plea based on immigration considerations, the defendant need only make some showing that the decision would have been rational. *Padilla,* 559 U.S. at 372, 130 S.Ct. 1473.

¶ 13 The record reveals that Ms. Morones has lived in the United States for twenty years and has a husband and four United States-citizen children who live in Colorado.

Preserving the ability to remain in the United States may be more important to a defendant than any potential jail sentence, *Immigration & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 323, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), so it might be rational for a defendant to "take [her] chances at trial," even though she might risk a longer prison sentence, *State v. Sandoval*, 171 Wash.2d 163, 249 P.3d 1015, 1022 (2011); *see also United States v. Orocio*, 645 F.3d 630, 645 (3d Cir.2011) ("[T]he threat of removal provides [a] powerful incentive to go to trial if a plea would result in removal anyway."), *abrogated on other grounds by Chaidez v. United States*, — U.S. —, 133 S.Ct. 1103, 1107 n. 2, 185 L.Ed.2d 149 (2013); *Sial v. State*, 862 N.E.2d 702, 706 (Ind.Ct.App.2007) (fact that the defendant had been living in United States for twenty years and had a wife and United States-citizen daughter established that he would have forgone plea and proceeded to trial). For this reason, the strength of the evidence against the defendant may not be as probative of rationality as it would be in a nonimmigration case. *State v. Favela*, 311 P.3d 1213, 1219 (N.M.Ct.App. 2013), *aff'd*, 343 P.3d 178 (N.M.2015); *see also Denisyuk v. State*, 422 Md. 462, 30 A.3d 914, 929 (2011) ("The appropriate determination is not whether [the defendant] ultimately would have been convicted following a trial, but rather whether there is a reasonable probability that, but for counsel's errors," the defendant would have insisted on going to trial.). But again, this is simply a factor for the court to consider after a hearing.

¶ 14 The remaining question is whether Ms. Morones was precluded, as a matter of law, from establishing prejudice because she received a written and oral advisement that her conviction could adversely affect her immigration status. On this record, we conclude that she was not.

█ ¶ 15 Ms. Morones initialed and signed a Crim. P. 11 Guilty Plea Advisement [1] that included, as one of forty-two applicable paragraphs, the following statement: "I understand that if I am not a citizen of the United States, this guilty plea can cause deportation, exclusion from admission to the United States, or denial of naturalization, or other immigration consequences." During the Rule 11 colloquy, the court advised Ms. Morones that her guilty plea to a felony "may and very likely will have adverse effects on your immigration status if you are not a legal resident" and warned of the "likelihood or the probability of negative or adverse consequences on your immigration status...." The district court also found relevant counsel's comment at the providency hearing that he had conducted "an immigration analysis" and had discussed with Ms. Morones the consequences of her plea.

¶ 16 We make two preliminary observations. First, we note that although Ms. Morones initialed the paragraph in the guilty plea advisement referring to potential adverse immigration consequences, she also initialed paragraph 8, which advised her that she was pleading guilty, not to criminal impersonation (as was actually the case), but to possession of a forged instrument. This raises a question, for determination at a hearing, whether Ms. Morones received the assistance of counsel in reviewing the guilty plea advisement and whether she understood all of its provisions. Second, we note that counsel's statement that he had conducted an "immigration analysis" and conveyed the results of that analysis to Ms. Morones is not at odds with Ms. Morones's allegation that her counsel described the conviction as a "minor felony" that, unlike identity theft, would not have any impact on her immigration case.

█ ¶ 17 As for the district court's advisement, we conclude that the advisement did not, as a matter of law, preclude Ms. Morones from making a prejudice showing and that, under the circumstances, a hearing is required.

¶ 18 A division of this court has recognized, based on supreme court authority, that "[w]hen an individual is represented by an attorney, it is reasonable to expect that he would rely on his attorney's advice." *Martinez–Huerta*, ¶ 22 (citing *People v. Pozo*, 746

---

1. Both the district court and the People refer to an immigration advisement in the plea agreement, but it was the standard guilty plea advisement form, not Ms. Morones's plea agreement, that referred to possible immigration consequences.

P.2d 523, 526 (Colo.1987)). For this reason, counsel's affirmative misrepresentation cannot be cured by a court advisement as easily as counsel's failure to advise. In the latter situation, where a defendant contends that her counsel gave her *no* information on the issue that forms the basis of her postconviction motion, a court's correct and complete advisement will generally neutralize counsel's allegedly deficient performance. *See, e.g., People v. Gresl,* 89 P.3d 499, 502 (Colo.App. 2003) (the defendant could not establish prejudice from counsel's failure to advise defendant about applicable sentencing ranges because court advised the defendant of possible range and imposed sentence within that sentencing range); *see also United States v. Gomez–Alvarez,* 482 Fed.Appx. 330, 335–36 (10th Cir.2012) (the defendant could not establish prejudice from counsel's failure to advise him of immigration consequences of guilty plea where court advised that guilty plea could result in deportation).

¶ 19 But Ms. Morones says that her lawyer, who specializes in immigration law, essentially promised her that, because of the precise nature of the offense, her guilty plea would not affect her immigration case and that she would be "just fine" for purposes of the removal proceedings.

¶ 20 Under these circumstances, we decline to commit to a rule, which the district court appeared to adopt, that, as a matter of law, a court's general advisement overrides counsel's specific promises. For one thing, the question whether a defendant has made the requisite prejudice showing under *Strickland* necessarily "turn[s] on the facts of a particular case." *Roe v. Flores-Ortega,* 528 U.S. 470, 485, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000); *see also Strickland,* 466 U.S. at 696, 104 S.Ct. 2052 (there is no mechanical rule for determining prejudice).

¶ 21 Moreover, adoption of a bright-line rule would be difficult to square with the supreme court's decision in *Carmichael.* In that case, the defendant claimed his counsel was ineffective in misadvising him of the possible penalties for sexual assault, which led the defendant to reject a plea offer. 206 P.3d at 804. The district court denied the defendant's Crim. P. 35(c) motion after a hearing. On appeal, a division of this court agreed with the district court that the defendant had failed to establish prejudice, in part because of his admission that he had been properly advised by the trial court, at an earlier hearing, of the possible penalties for the charged offenses. *People v. Carmichael,* 179 P.3d 47, 53 (Colo.App.2007). The supreme court reversed, concluding that the defendant had proven that, absent his counsel's erroneous advice, he would have accepted the plea offer. 206 P.3d at 809. Like the court of appeals, the dissent relied in part on the fact that the defendant had been properly advised of the possible sentence by the district court, *id.* at 811 (Coats, J., dissenting), but the prior advisement apparently did not dissuade the majority from concluding that the defendant had demonstrated the requisite prejudice. *Id.* at 807–08. Although *Carmichael* arose in a different procedural context—rejection of a plea offer rather than acceptance of a plea offer—it is the underlying principle that is instructive here: a proper advisement by the district court does not preclude, as a matter of law, a finding of prejudice based on counsel's specific, erroneous advice.

¶ 22 The principle is likely to be particularly apt in the immigration context, where a general advisement about the possibility of adverse immigration consequences may not be sufficient to dispel a specific promise or misrepresentation by counsel. *Favela,* 311 P.3d at 1222 (even unequivocal warning by court is insufficient to cure prejudice from counsel's deficient performance because warning alone does not ensure that the defendant has received effective assistance in evaluating or responding to such advisement); *People v. Garcia,* 29 Misc.3d 756, 907 N.Y.S.2d 398, 407 (N.Y.Sup.Ct.2010) (court's general warning about immigration consequences will not "automatically cure counsel's failure nor erase the consequent prejudice"); *cf. Padilla,* 559 U.S. at 374 n. 15, 130 S.Ct. 1473 (holding that counsel was ineffective for failing to advise on immigration consequences and remanding for a prejudice determination, despite the fact that the standard plea form used in Kentucky courts provided notice of possible immigra-

tion consequences); *People v. Rael,* 681 P.2d 530, 532 (Colo.App.1984) (where counsel's advice may have amounted to a promise of a particular sentence, court would not "assume that defendant's providency inquiry dispelled the effects of the allegedly tainted advice"); *Commonwealth v. Clarke,* 460 Mass. 30, 949 N.E.2d 892, 907 n. 20 (2011) (court's advisement regarding immigration consequences "is not an adequate substitute for defense counsel's professional obligation to advise her client of the likelihood of specific and dire immigration consequences," though it "may be relevant to the prejudice prong," but denying defendant's motion on other grounds), *abrogated on other grounds by Chaidez,* —— U.S. ——, 133 S.Ct. at 1107 n. 2.

¶ 23 The court told Ms. Morones that her guilty plea was likely to adversely affect her immigration status, but it also explained that any determination of her status would be made by a different court and a different judge and, presumably, pursuant to different rules and upon consideration of different information. The court's general advisement—which underscored that the court was uninvolved in, and therefore unfamiliar with, the details of Ms. Morones's immigration case—was neither irreconcilable with counsel's alleged misrepresentations nor specific enough to cure any prejudice from her counsel's allegedly deficient performance. Because removal proceedings had already been initiated, Ms. Morones may have interpreted the court's advisement as an after-the-fact warning that she could be subject to removal proceedings, while, at the same time, she may have interpreted her lawyer's advice as confirmation that she had a meritorious defense to the pending removal action. We will not preclude a finding of prejudice, as a matter of law, where the court's advisement leaves room for doubt as to the consequences of the plea. *See Kazadi,* 284 P.3d at 75 (remanding for hearing on the defendant's Crim. P. 35(c) motion because written advisement stated that only defendant's felony plea, and not his misdemeanor plea, might result in adverse immigration consequences); *see also United States v. Akinsade,* 686 F.3d 248, 254 (4th Cir.2012) (court's admonition that guilty plea *could* lead to deportation was

not sufficient to cure lawyer's specific error that two convictions were required for deportation); *Hernandez v. State,* 124 So.3d 757, 763 (Fla.2012) (equivocal warning on immigration consequences does not necessarily eliminate prejudice from counsel's deficient performance); *Ortega–Araiza v. State,* 331 P.3d 1189, 1196–97 (Wyo.2014) (court's providency advisement was not specific enough to cure counsel's deficient performance in failing to more particularly advise the defendant of immigration consequences).

¶ 24 Under these circumstances, we are not persuaded by the People's argument, based on *People v. DiGuglielmo,* 33 P.3d 1248 (Colo.App.2001), that Ms. Morones should have asked the court for clarification about its advisement if she had "questions or concerns." Ms. Morones does not contend that she had questions or concerns, or that she was confused at the providency hearing, based on irreconcilable advisements from her counsel and the court, which is the situation addressed in *DiGuglielmo. See id.* at 1251 (defendant's ineffective assistance of counsel claim, based on counsel's alleged promise that defendant would receive a deferred judgment, failed as a matter of law because defendant was advised orally and in writing that he would be sentenced to probation and, therefore, defendant had a duty to resolve the conflict by requesting clarification from the court). Instead, her allegation is that she relied on her lawyer's specific, erroneous representations—with no reason, she says, to question the advice—when she agreed to plead guilty to criminal impersonation. We cannot say that under these circumstances her reliance was unreasonable as a matter of law. That is a question for the district court to determine after a hearing. *See State v. Yahya,* No. 10AP–1190, 2011 WL 5868794, at *5 (Ohio Ct.App. Nov. 22, 2011) ("When the trial court subsequently delivered the statutory warning that pleading guilty *might* result in deportation, exclusion, or denial of naturalization, it might have been reasonable for appellant to rely on her attorney's specific assurance that she would not be deported. ... Those issues could be more fully explored during a hearing.").

### III. Conclusion

¶ 25 We conclude that Ms. Morones is entitled to a hearing on her Crim. P. 35(c) motion. Accordingly, we reverse the district court's order and remand for an evidentiary hearing.

JUDGE TAUBMAN and JUDGE J. JONES concur.